UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OMNI HEALTHCARE INC. and
JOHN DOE,

      Plaintiffs,

v.                                       Case No: 6:22-cv-696-JSS-DCI

NORTH BREVARD COUNTY
HOSPITAL DISTRICT, HALIFAX
HOSPITAL MEDICAL CENTER,
GEORGE MIKITARIAN,
CHRISTOPHER MCALPINE,
ANUAL JACKSON, SR., ERIC
PEBURN, and JEFF FEASEL,

      Defendants.
_____/

## ORDER

Defendants move to dismiss the amended complaint as a shotgun pleading and for failure to state a claim. (Dkts. 56 & 57.) Plaintiff Omni Healthcare Inc. opposes the motions. (Dkt. 62.) Upon consideration, for the reasons outlined below, the court grants the motions in part and denies them in part.

## FACTUAL BACKGROUND[1]

Given the surplusage of information contained in the amended complaint, (*see* Dkt. 11), the court reports only the background necessary to explain this order.

_____

[1] The court accepts the well-pleaded factual allegations in the amended complaint as true and construes them in the light most favorable to Plaintiffs. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

Plaintiff Omni Healthcare Inc. is a corporation based in Brevard County, Florida, that operates as a "multi-specialty physician group." (*Id.* ¶ 10.) Plaintiff John Doe, presumably a pseudonym, is an executive at Omni. (*Id.* ¶ 11.) Non-party Craig Deligdish is Omni's principal. (*Id.* ¶ 132.) Defendant North Brevard County Hospital District does business as Parrish Medical Center and is "an independent special taxing district" in Brevard County that operates a "community hospital, an affiliated medical group[,] and related support services." (*Id.* ¶ 12.) From 2017 to 2021, Omni provided management services to Parrish. (*Id.* ¶ 115.) Omni's "duties included evaluating the medical needs of the community, communicating with employees and doctors[,] and recruiting physicians." (*Id.*)

Defendants George Mikitarian, Christopher McAlpine, and Anual Jackson, Sr. are executives at Parrish. (*Id.* ¶¶ 14–16.) Mikitarian is Parrish's President and Chief Executive Officer, McAlpine is Parrish's Chief Transformation Officer and a Senior Vice President "responsible for strategic planning, business development[,] and strategy," and Jackson is Parrish's Chief Corporate Compliance and Privacy Officer. (*Id.*) The court refers to Parrish, Mikitarian, McAlpine, and Jackson collectively as the Parrish Defendants. Defendant Halifax Hospital Medical Center is "a legislatively-chartered taxing healthcare organization governed by a Board of Commissioners appointed by the Governor of Florida." (*Id.* ¶ 13.) Defendants Jeff Feasel and Eric Peburn are executives at Halifax. (*Id.* ¶¶ 17–18.) Feasel is Halifax's President and Chief Executive Officer, and Peburn is Halifax's Executive Vice

President and Chief Financial Officer.  (*Id.*)  The court refers to Halifax, Feasel, and Peburn collectively as the Halifax Defendants.

Florida's Low-Income Pool (LIP) program "is used to pay [healthcare] providers for the cost of care given to the most vulnerable patients." (*Id.* ¶ 1.)  *See* Op. Att'y Gen. Fla. 2009-06 (2009), 2009 Fla. AG LEXIS 7, *4 ("In 2006, the State of Florida established the Low-Income Pool (LIP) program as one of the components of a broad-ranging reform of the Florida Medicaid Program.  The program is a joint federal-state program requiring funding from both federal and . . . non-federal sources.").  The Coronavirus Aid, Relief, and Economic Security (CARES) Act aims to provide federal relief for persons negatively affected by the Covid-19 pandemic and prohibits "physician groups [from] receiv[ing] money from the [g]overnment for services that have already been covered by other C[ovid-19] relief programs." (Dkt. 11 ¶ 1.)  *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).  The Stark Act "makes it illegal for hospitals to compensate referring physicians based on the value and volume of referrals for designated health services." (Dkt. 11 ¶ 1.)  *See* Stark Act, 42 U.S.C. § 1395nn.  Plaintiffs allege that Defendants "colluded to defraud the LIP program and the CARES Act[] and, in doing so, submitted false and/or fraudulent claims for payment to the United States and the State of Florida." (Dkt. 11 ¶ 2.)  Plaintiffs further allege that Defendants violated the Stark Act by paying physicians "exorbitant salaries" "in exchange for referrals." (*Id.* ¶¶ 2, 97.)  When describing the violations of the Stark Act, Plaintiffs focus on Parrish's alleged misconduct to the exclusion of Halifax's.  (*See, e.g.*, *id.* ¶¶ 97–112.)  According to Plaintiffs, Parrish's

- 3 -

"[e]xecutives knew [that] salaries were excessive" and that Parrish "would lose money on certain physician practices" as a result, but Parrish "justified" the salaries "by tracking downstream revenue in the form of physician referrals" and by noting "each doctor's contribution . . . to the bottom line." (*Id.* ¶ 97.)

Florida's Agency for Health Care Administration (AHCA) handles the LIP program. (*See id.* ¶ 36.) *See Low Income Pool (LIP) Program*, Fla. Agency for Health Care Admin. (2024), https://ahca.myflorida.com/medicaid/medicaid-finance-and-analytics/medicaid-program-finance/lip-dsh-gme-operations/low-income-pool-lip-program (last visited Sept. 17, 2024). "AHCA requires local government contributors to complete a LIP[-program] agreement that spells out their financial commitment, the [LIP-]program rules, the proper use of the aid, audit procedures[,] and record keeping." (Dkt. 11 ¶ 35.) According to Plaintiffs, "AHCA has been repeatedly criticized for failing to provide adequate oversight and guidance for the LIP program." (*Id.* ¶ 36.)

In November 2017, Halifax and Parrish executed an agreement regarding the reallocation of LIP-program funds. (*See id.* ¶¶ 45–46.) Plaintiffs allege that "[t]he agreement describe[d] the three-step process" that Halifax and Parrish "used to manipulate the LIP program so Halifax would not have to repay $4 million." (*Id.* ¶ 46.) In addition, the agreement allegedly provided that "Halifax w[ould] indemnify [Parrish] for any loss associated with the [reallocation] transaction." (*Id.* ¶¶ 53–54.) "AHCA approved the [2017] reallocation." (*Id.* ¶ 48.) "Two years later," in December 2019, Parrish and Halifax executed another agreement, which laid out a

similar reallocation and was allegedly "designed to manipulate" the LIP program further.  (*Id.* ¶ 55.)  According to Plaintiffs, through these agreements, "Parrish accepted kickbacks in exchange for circumventing" federal regulations even though "questions [had been] raised internally" about the legality of the transactions.  (*Id.* ¶ 58.)  Plaintiffs state that "[c]orrespondence to the media, members of Parrish's Board of Directors[,] and other community leaders describe[d] the arrangements between Parrish and Halifax" that purportedly "involved manipulation of LIP[-program] funds."  (*Id.* ¶ 134.)

Concerned that these arrangements violated the Federal False Claims Act, 31 U.S.C. §§ 3729–3733, Plaintiffs shared their concerns with Parrish's "President, Chief Financial Officer[,] and Chief Compliance Officer" in March 2021, (Dkt. 11 ¶ 130), but "[t]he senior executives ignored [Plaintiffs'] concerns," (*id.* ¶ 131).  Plaintiffs undertook "efforts to disclose substantial fraud by the hospital district against government programs," (*id.* ¶ 137), and "made voluntary disclosures to the United States" sometime before they filed this lawsuit on February 1, 2022, (*id.* ¶ 8; *see* Dkt. 1 at 1).  Plaintiffs claim that in retaliation for their disclosure efforts, Parrish, "at the direction of the senior executives, . . . blocked email addresses, terminated contracts and leases [worth millions of dollars], . . . filed lawsuits against . . . Omni," and forced Omni to incur "substantial legal expenses . . . to fight . . . arbitrary and capricious actions taken against [Plaintiffs]."  (Dkt. 11 ¶¶ 132, 137.)

Plaintiffs also state that Mikitarian sued Omni and Deligdish for defamation.  (*Id.* ¶ 132.)  According to Plaintiffs, Mikitarian alleged that Omni and Deligdish

"wrongfully accused Mikitarian and Parrish of fraud, conspiracy[,] and violations of the [Federal] False Claims Act" and that Deligdish "used or controlled" the name Frank Harrison as "a fraudulent alias" when engaging in the defamation. (*Id.* ¶ 133.) Plaintiffs report that Mikitarian's "lawsuit was dismissed with prejudice after a hearing on January 13, 2022." (*Id.*)

## PROCEDURAL HISTORY

On February 1, 2022, Plaintiffs initiated this case in the Northern District of Florida as relators of the United States and Florida. (*See* Dkt. 1 at 1.) The qui tam complaint asserted three counts against Defendants for violations of the Federal False Claims Act and the Stark Act (Count I), violations of the Florida False Claims Act[2] and the Stark Act (Count II), and retaliation under the Federal False Claims Act (Count III). (*Id.* ¶¶ 128–38.) Aside from being brought under Florida statute instead of federal statute, Count II was fairly similar to Count I. (*See id.* ¶¶ 128–35.) Plaintiffs brought each count against "Defendants" collectively. (*Id.*) In a "Prayer [for Relief]" section following the counts, Plaintiffs sought monetary damages, including costs and attorney fees. (*Id.* at 32–33.)

Plaintiffs divided the allegations preceding the counts into eight sections: "Introduction," "Jurisdiction and Venue," "Parties," "Legal Background,"[3] "Allegations," "Violations of Stark," "Damages," and "Retaliation." (*Id.* ¶¶ 1–127.)

---

[2] Fla. Stat. §§ 68.081–.09.
[3] The court labels, "Legal Background," the section that lacked a heading but contained five subsections of background on the legal bases for Plaintiffs' claims. (*See id.* ¶¶ 19–31.)

"Legal Background" contained five subsections: "The Federal and Florida False Claims Acts," "The Stark Act," "Violations of Stark Can Form the Basis of [False Claims Act] Liability," "The Low Income Pool Program," and "The CARES Act." (*Id.* ¶¶ 19–31.)   "Allegations" contained seven subsections: "Overview and Background," "Legal History Involving CMS,[4] Florida[,] and AHCA," "Introduction of Halifax," "Violation of Federal Rules and Regulations," "Halifax Holds Parrish Harmless," "No Authority to Participate," and "The CARES Act." (*Id.* ¶¶ 32–94.)   Counts I and II each incorporated all eight sections of preceding allegations. (*Id.* ¶¶ 128, 132.)  Count III incorporated only the "Retaliation" section. (*Id.* ¶ 136.)

On April 15, 2022, this case was transferred to this district based on the parties' stipulation. (*See* Dkts. 5 & 6.)  *See* 28 U.S.C. § 1404(a).  On August 10, 2022, Plaintiffs filed an amended qui tam complaint.  (*See* Dkt. 11.)  The amended complaint is identical to the initial complaint with three exceptions.  (*Compare* Dkt. 1, *with* Dkt. 11.)  First, the amended complaint changes "Northern District of Florida" to "Middle District of Florida" to comport with the interdistrict transfer.  (*Compare* Dkt. 1 at 1, 3 ¶ 6, *with* Dkt. 11 at 1, 3 ¶ 6.)  Second, it adds the subsections "Parrish and illumed, LLC" and "Claims for Services Provided by Another"[5] to the end of the "Violations

---

[4] CMS refers to the Centers for Medicare and Medicaid Services.  (*See* Dkt. 11 ¶ 27.)

[5] Defendants submit that these two new subsections are irrelevant to the counts asserted in the amended complaint, (Dkt. 56 at 7–8; Dkt. 57 at 13), and Omni does not mention the subsections in its response, (*see* Dkt. 62).  The court agrees that the subsections contain unnecessary information. When repleading, Plaintiffs shall eliminate extraneous allegations of fact.  *See Russell v. Deutsche Bank Nat'l Tr. Co.*, No. 5:23-cv-01149-HNJ, 2024 U.S. Dist. LEXIS 59505, at *24 (N.D. Ala. Apr. 1, 2024) (instructing the plaintiff to "remove immaterial facts not obviously connected to any particular cause

of Stark" section and changes paragraph numbers correspondingly.  (*Compare* Dkt. 1 ¶¶ 95–118, *with* Dkt. 11 ¶¶ 95–128.)  Third, it provides the years for a date range in that section that was initially marked "XXX to YYY."  (*Compare* Dkt. 1 ¶ 115 (emphasis omitted), *with* Dkt. 11 ¶ 115.)

On September 6, 2023, the United States and Florida notified the court of their decision not to intervene in this case.  (*See* Dkt. 26.)  They requested that the court "solicit [their] written consent" before it ruled on any motion to dismiss, (*id.* at 2), and the court granted the request, (Dkt. 27 ¶ 7).  The United States and Florida now inform the court that they "take no position on" Defendants' motions to dismiss.  (Dkt. 79 at 2.)

Defendants filed their motions (Dkts. 56 & 57) in January 2024, and Omni filed a response (Dkt. 62) as well as exhibits for the court's consideration (Dkt. 61).  Omni's response contains an electronic comment from one of its attorneys stating: "[t]he Stark allegations do not appear specific enough in the amended complaint."  (Dkt. 62 at 15.)  Omni moved to strike its response as an "inadvertently filed . . . draft," (Dkt. 63 at 1), and the court denied the motion to strike, (Dkt. 67).  With the court's leave, (*see* Dkts. 69 & 71), Defendants then filed replies in support of their motions to dismiss, (*see* Dkts. 72 & 73).  Although the court permitted Omni to file a sur-reply, it did not file one. (*See* Dkts. 75 & 76.)

## APPLICABLE STANDARDS

---

of action"); *Heath v. Adams*, No. CV 622-070, 2023 U.S. Dist. LEXIS 167598, at *18 (S.D. Ga. Sept. 20, 2023) (instructing the plaintiffs to "take care to eliminate extraneous materials").

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count."  *Id.*  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323.

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff."  *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Generally, when analyzing

- 9 -

a motion to dismiss for failure to state a claim, a court considers only the four corners of the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). "However, a document outside the four corners of the complaint may . . . be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). Further, at the pleading stage, courts may judicially notice documents like newspaper articles to "determin[e] which statements the documents contain[ed]" and may judicially notice documents publicly filed in litigation. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## ANALYSIS

Defendants contend that the amended complaint should be dismissed as a

shotgun pleading.  (Dkt. 56 at 3, 13; Dkt. 57 at 9–14.)  Here, a dismissal on shotgun-pleading grounds must be without prejudice.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun[-]pleading grounds.").  Because the court agrees that the amended complaint is a shotgun pleading, the court does not address Defendants' other arguments for dismissal without prejudice.  That said, Defendants also make three arguments for dismissal with prejudice.  First, Defendants maintain that public disclosure bars apply to the claims based on the LIP program and the CARES Act.  (Dkt. 56 at 21–25; Dkt. 57 at 18–26.)  Second, the Parrish Defendants contend that the claims based on the LIP program should be dismissed with prejudice because Plaintiffs cannot prove scienter or materiality.  (Dkt. 56 at 20–21.)  Third, the Parrish Defendants assert that Plaintiffs' bad faith regarding the attorney's comment in Omni's response warrants dismissal of the Stark Act claims with prejudice.  (Dkt. 73 at 4–5.)  The court first explains why the amended complaint is a shotgun pleading and then addresses the arguments about the public disclosure bars, scienter and materiality, and bad faith.

### 1. Shotgun Pleading

Defendants contend that the amended complaint is a shotgun pleading because it asserts multiple claims against multiple Defendants without clarifying which Defendants are associated with which claims and because it includes numerous factual allegations that do not form the basis of any claim.  (Dkt. 56 at 3, 13; Dkt. 57 at 9–14.)

Omni responds that Defendants "misunderstand[] and misappl[y]" the term "shotgun pleading." (Dkt. 62 at 6–7.) Omni asserts that the amended complaint "very clearly directs" at all Defendants the claims based on the LIP program, but it agrees with the Halifax Defendants that the claims based on the CARES and Stark Acts "are not directed at" them. (*Id.* at 7 n.1.) The Halifax Defendants reply that Plaintiffs cannot amend their amended complaint through a response to Defendants' motions. (Dkt. 72 at 2.) According to the Halifax Defendants, the "concession that [Plaintiffs] did not intend to bring" the claims based on the CARES and Stark Acts against the Halifax Defendants "does not resolve the fact that the [a]mended [c]omplaint continues to refer to 'Defendants' collectively with respect to the[] claims and thus . . . remains a shotgun pleading." (*Id.* at 2–3.)

The court agrees with Defendants that the amended complaint is a shotgun pleading that does not provide them with "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. In fact, "it is virtually impossible to know" from the amended complaint "which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). A great deal of the confusion arises because none of the counts name the defendants against whom the count is brought. (*See* Dkt. 11 ¶¶ 138–48.) *See Weiland*, 792 F.3d at 1323 (describing one type of shotgun pleading as "asserting multiple claims against multiple defendants without specifying . . . which of the defendants [each] claim is brought against").

Counts I and II refer to Defendants collectively and incorporate all the sections

preceding the counts, thereby implying that all claims in Counts I and II are asserted against all Defendants.  (*See id.* ¶¶ 1–145.)[6]  However, Omni states that the claims based on the CARES and Stark Acts "are not directed at" the Halifax Defendants. (Dkt. 62 at 7 n.1.)  As those defendants observe, (Dkt. 72 at 2), "[P]laintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015).  Although Omni's reading of the amended complaint makes sense because the amended complaint lacks allegations that would support the Halifax Defendants' liability for such claims, (*see* Dkt. 11), it is not clear from the amended complaint which claims in Counts I and II are associated with which Defendants.

That Counts I and II contain numerous claims compounds the confusion.  Each count is brought under multiple subsections of the Federal or Florida False Claims Act and alleges misconduct related to multiple government sources: the LIP program, the CARES Act, and the Stark Act.  (*See id.*)  Count I asserts violations of 31 U.S.C. § 3729(a)(1)(A), (B), (C), and (G), (Dkt. 11 ¶ 140), and Count II asserts violations of the Florida equivalents of 31 U.S.C. § 3729(a)(1)(A), (B), and (C), (Dkt. 11 ¶ 144). Further, the counts allege that "[a]s described in greater detail above, Defendants defrauded" federal and Florida healthcare programs by abusing "the LIP [p]rogram

---

[6] When repleading, Plaintiffs shall "avoid general references to 'Defendants' . . . ; they shall instead identify the relevant individuals and/or entities with precision in each of their allegations."  *See Behr v. Campbell*, No. 9:18-CV-80221-RLR, 2021 U.S. Dist. LEXIS 212712, at *6 (S.D. Fla. Nov. 3, 2021). Moreover, Plaintiffs shall incorporate into a count only those paragraphs necessary to support the count.  *See id.* ("None of the . . . [c]ounts should incorporate every prior paragraph by reference; rather, . . . Plaintiffs shall only incorporate those select paragraphs that support the [c]ount.").

and the CARES Act" and engaging in "the submission of claims which Defendants knew were tainted by violations of the Stark" Act. (*Id.* ¶¶ 139, 143.) When repleading the claims in Counts I and II, Plaintiffs shall "list each cause of action into a separately numbered count, with one legal theory per count, and a specifically named defendant or defendants per count." *Harris v. Archie*, No. 23-cv-14392-Can, 2024 U.S. Dist. LEXIS 74705, at *8 (S.D. Fla. Apr. 24, 2024), *report and recommendation accepted by* 2024 U.S. Dist. LEXIS 84406, at *2 (S.D. Fla. May 9, 2024); *see Weiland*, 792 F.3d at 1323 (describing one type of shotgun pleading as failing to "separat[e] into a different count each cause of action or claim for relief").

Like Counts I and II, Count III fails to specify which Defendant each allegation concerns. The count incorporates the "Retaliation" section[7] but otherwise mentions Defendants only once: in the allegation that "[a]s alleged in detail above, [Plaintiffs] engaged in lawful acts in furtherance of their efforts to stop Defendants' fraudulent actions regarding the LIP program." (Dkt. 11 ¶ 148.) Although the collective reference to Defendants and the broad mention of "detail[s]" "alleged . . . above" imply that Count III is brought against all Defendants, the allegations in the

---

[7] The court gives Plaintiffs the benefit of the doubt that they do not intend to incorporate paragraphs 120 to 129 into Count III but instead intend to include only the "Retaliation" section. (*See* Dkt. 11 ¶ 146 ("incorporat[ing] paragraphs 120[ to ]137").) Plaintiffs seemingly neglected to change "120" to "130" in paragraph 146 when they amended the initial complaint. (*Compare id.*, *with* Dkt. 1 ¶ 136.) Accepting the amended complaint as written would incongruously incorporate into Count III all of the "Parrish and illumed, LLC" subsection but its first paragraph, as well as the "Claims for Services Provided by Another" subsection and the single sentence in the "Damages" section. (*See* Dkt. 11 ¶¶ 119–29.) It is unclear how these parts of the amended complaint would support the retaliation alleged in Count III. When repleading Count III, Plaintiffs shall take greater care in incorporating paragraphs by reference.

"Retaliation" section suggest that the count is not brought against the Halifax Defendants.  That section mentions Halifax only in passing when discussing the allegedly illegal "arrangements between Parrish and Halifax."  (*Id.* ¶ 134; *accord id.* ¶ 136.)

Part of the difficulty with Count III is that it excludes allegations that identify the parties and provide necessary legal and factual background for this case.  (*See id.* ¶ 146.)  It also excludes all allegations of jurisdiction and venue.  (*See id.*)[8]  These deficiencies alone warrant dismissal of the count without prejudice.  *See Sanchez v. Team Health, LLC*, No. 18-21174-CIV, 2020 U.S. Dist. LEXIS 260038, at *4 (S.D. Fla. May 18, 2020) (dismissing without prejudice counts that failed to incorporate allegations of jurisdiction, venue, and other necessary details); *Secker v. Moorings Ltd.*, No. 8:12-CV-1616-T-27MAP, 2013 U.S. Dist. LEXIS 208420, at *2–3 & n.5 (M.D. Fla. Jan. 15, 2013) (noting that a count "fail[ed] to reallege or incorporate by reference any of the background allegations essential to establishing jurisdiction and venue" and then dismissing the complaint without prejudice as a shotgun pleading).  The "[a]s alleged in detail above" language in Count III does not solve the problem because it is vague about which of the above allegations apply to the count.  (Dkt. 11 ¶ 148.)  Further, this language is most fairly read as referring to Plaintiffs' "lawful acts" and "Defendants' fraudulent actions regarding the LIP program," not as establishing jurisdiction, venue, or other necessary details.  (*Id.* ¶ 148.)  When repleading Count

---

[8] These deficiencies exist even if paragraph 146 is read as incorporating paragraphs 120 to 129 into Count III.

III, Plaintiffs shall incorporate all necessary details.

Even if Count III incorporated the allegations that identify the parties, the defendants associated with the count would be unclear. These allegations define the word "Parrish" as shorthand for Defendant North Brevard County Hospital District, which does business as Parrish Medical Center. (*See id.* ¶¶ 12.) They also identify Mikitarian as Parrish's President and Chief Executive Officer, Jackson as Parrish's Chief Corporate Compliance and Privacy Officer, and McAlpine as Parrish's Chief Transformation Officer and a Senior Vice President "responsible for strategic planning, business development[,] and strategy." (*Id.* ¶¶ 14–16.) Count III states that "[r]ather than investigate" the allegations of fraud that Plaintiffs brought to the attention of Parrish's President, Chief Compliance Officer, and Chief Financial Officer, "Parrish, at the direction of the senior executives, retaliated." (*Id.* ¶¶ 130–32.) Count III further states that "[r]etaliation by Parrish" damaged Plaintiffs. (*Id.* ¶ 137.) These statements indicate that Parrish is a defendant for Count III. The count may also be brought against the senior executives who directed the retaliation, but it may just as easily be brought against Parrish alone. *See Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992) (acknowledging that a plaintiff may make "a deliberate decision not to sue a party"). If it is asserted against Parrish alone, the senior executives could still be defendants for the other counts. If Count III is asserted against the senior executives as well, Mikitarian and Jackson would be defendants for the count as Parrish's President and Chief Compliance Officer.

However, Count III does not refer to McAlpine by name or mention Parrish's

Chief Transformation Officer.  (*See* Dkt. 11 ¶¶ 120–37, 146–48.)  It mentions Parrish's Chief Financial Officer, instead.  (*Id.* ¶¶ 130–31.)  Because McAlpine is identified as Parrish's Chief Transformation Officer, not its Chief Financial Officer, (*id.* ¶ 16), he would not be a defendant for the count.  The amended complaint does not even identify Parrish's Chief Financial Officer.  (*See id. passim.*)  It only identifies Halifax's.  (*Id.* ¶ 17.)  Although the amended complaint does not support that McAlpine is a defendant for Count III, Omni implies that he is intended to be.  It asserts that it and Doe were retaliated against when they reported violations of the Federal False Claims Act "in an effort to prevent the [Parrish] Defendants"—including McAlpine—"from continuing to benefit from [the] violations."  (Dkt. 62 at 6, 23.)  When repleading Count III, Plaintiffs shall "specifically name[]" the defendant or defendants associated with the count to avoid confusion.  *See Harris*, 2024 U.S. Dist. LEXIS 74705, at *8.

Because the counts in the amended complaint are so unclear that it is virtually impossible to know which claims are brought against which Defendants, the court will dismiss the amended complaint without prejudice as a shotgun pleading.  *See Wells v. Royal Caribbean Int'l Cruises Ltd.*, No. 20-13378, 2021 U.S. App. LEXIS 21435, at *7 (11th Cir. July 20, 2021) (affirming the dismissal of a complaint that "contained multiple claims against multiple defendants without specifying which of the defendants were responsible for which acts or which of the defendants the claim was brought against"); *see also Mikov v. Village of Palm Springs*, No. 23-13311, 2024 U.S. App. LEXIS 15526, at *8 (11th Cir. June 26, 2024) (affirming a dismissal without prejudice on shotgun-pleading grounds when the complaint "made it overly

burdensome to identify which facts support[ed] each claim"). When Plaintiffs replead, they shall pay close attention to this order's directives in order to avoid a future shotgun pleading. *See Vibe Micro*, 878 F.3d at 1296 ("In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings.").

### 2. Public Disclosure Bars

Defendants argue that Plaintiffs' claims in Counts I and II based on the LIP program and the CARES Act should be dismissed with prejudice as precluded under the public disclosure bars of the Federal and Florida False Claims Acts. (Dkt. 56 at 21–25; Dkt. 57 at 18–26.) Omni responds that the public disclosure bars do not apply because the amended complaint's allegations are not substantially similar to publicly disclosed allegations and because Omni is an original source of disclosed information. (Dkt. 62 at 16–23.) The court agrees with Defendants that Omni's claims should be dismissed with prejudice under the public disclosure bars, but the court will dismiss Doe's claims without prejudice.[9]

The Federal False Claims Act provides that unless the government objects[10] or "the action is brought by the Attorney General" or "an original source of the

---

[9] In support of its position that it is an original source, Omni asks the court to consider correspondence that Omni sent to federal and Florida government agencies. (*See* Dkt. 62 at 21; *see also* Dkts. 61, 61-1, 61-2, 61-3, & 61-4.) This request is denied as moot because, as explained herein, Omni is a corporation, not an individual, and thus cannot be an original source for purposes of the public disclosure bars.

[10] Given that the United States and Florida take no position on Defendants' motions to dismiss, (*see* Dkt. 79 at 2), they make no objection regarding the public disclosure bars of the Federal and Florida False Claims Acts.

information," a "court shall dismiss an action or claim" asserted under the act "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in certain statutorily enumerated ways including "from the news media." 31 U.S.C. § 3730(e)(4)(A)(iii). This provision is known as the act's public disclosure bar. The Florida False Claims Act "is modeled after, and tracks the language of," the Federal False Claims Act, *United States ex rel. Mueller v. Eckerd Corp.*, No. 95-2030-CIV-T-17C, 1998 U.S. Dist. LEXIS 23500, at *3 (M.D. Fla. Oct. 2, 1998), and thus establishes an equivalent bar, Fla. Stat. § 68.087(3)(c). *See Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1272 (11th Cir. 2018) ("Florida has enacted a parallel statutory scheme with similar provisions."). To decide whether the public disclosure bars apply, courts employ a three-part test: (1) have allegations of false claims been publicly disclosed; "(2) if so, are the plaintiff's allegations substantially the same as" the publicly disclosed allegations; and "(3) if yes, is the plaintiff an 'original source.'" *United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1292 (M.D. Fla. 2018) (citing *Osheroff*, 776 F.3d at 812).

The first part of the test asks whether allegations of false claims have been publicly disclosed, as through news media. *Id.* For purposes of the public disclosure bars, publicly available websites qualify as news media, and allegations disseminated through such websites constitute public disclosures. *See Osheroff*, 776 F.3d at 813–14. The amended complaint itself alleges that "[c]orrespondence to the media . . . describe[d] the arrangements between Parrish and Halifax, which involved manipulation of LIP[-program] funds." (Dkt. 11 ¶ 134.) The court takes judicial

notice, *see Osheroff*, 776 F.3d at 811 n.4, of a July 2021 online article about the arrangements between Parrish and Halifax, *see* Jacob Ogles, *As Titusville Hospital Aims to Evict OMNI Healthcare, Accusations Between Executives Fly*, Florida Politics (July 19, 2021), https://floridapolitics.com/archives/442034-as-titusville-hospital-aims-to-evict-omni-healthcare-accusations-between-executives-fly/. (Dkt. 56-1.)  According to the article, an email from Harrison (Deligdish's alias, per Mikitarian) alleged that Parrish and Halifax, through their senior executives, engaged in a conspiracy "to violate Florida's False Claims Act" that involved "millions of dollars." (*Id.* at 2.)  The article quoted the email: "[o]n the surface, it appears that Halifax and Parrish conspired [to] game the system whereby hospitals [would] receive state and federal money for providing care to low-income patients." (*Id.*)  Embedded in the article was the complaint (including exhibits) for Mikitarian's defamation lawsuit, which referred to the email and to documents describing similar allegations and which attached the email and documents as exhibits. (*See id.* at 3, 7–27.)  One of the complaint's exhibits published through the article not only mentioned the alleged "violations of the False Claims Act" but also referred to "evidence that Parrish may have mis[]applied C[ARES] Act funds that it received from the State of Florida, through Brevard County." (*Id.* at 20–21.)  Accordingly, the first part of the test is satisfied because allegations against Defendants based on false claims related to the LIP program and the CARES Act were publicly disclosed through news media before Plaintiffs initiated this action.

The second part of the test is a "quick trigger for the more exacting original

- 20 -

source analysis" in the third part. *Cooper v. Blue Cross & Blue Shield*, 19 F.3d 562, 568 n.10 (11th Cir. 1994) (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992)).  The second part is satisfied if there is "a substantial identity between the public disclosures and the qui tam complaint such that the prior disclosures depict essentially the same scheme." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 523 (6th Cir. 2020) (internal quotation marks omitted). "'[O]nce the government knows the essential facts of a fraudulent scheme,' it generally 'has enough information to discover related frauds.'" *Id.* (quoting *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009)); *see United States ex rel. Zafirov v. Fla. Med. Assocs. LLC*, No. 8:19-cv-1236-KKM-SPF, 2021 U.S. Dist. LEXIS 185891, at *21 (M.D. Fla. Sep. 28, 2021) (describing the "key inquiry" in the second part of the test as "whether the disclosures could have put the government on notice of the fraud alleged" in the complaint (quoting *Maur*, 981 F.3d at 523)).  Here, the second part of the test is satisfied because the online article and the amended complaint describe the same alleged scheme between Parrish and Halifax to defraud the government through the LIP program and the CARES Act.

The third part of the test asks whether the plaintiff is an original source. *See Bernier*, 311 F. Supp. 3d at 1292, 1297.  The Federal False Claims Act defines an "original source" as

> an individual who either . . . prior to a public disclosure . . . , has voluntarily disclosed to the [g]overnment the information on which allegations or transactions in a claim are based[] or . . . has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions[] and . . . has voluntarily provided the

information to the [g]overnment before filing [the] action.

31 U.S.C. § 3730(e)(4)(B). The Florida False Claims Act provides an equivalent definition. *See* Fla. Stat. § 68.087(3). Because neither statute defines the word "individual," the court gives the word its ordinary meaning: a natural person, as distinguished from a business entity. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454–55 (2012). Omni is a corporation, not an individual, (*see* Dkt. 11 ¶ 10), so it cannot be an original source for purposes of the public disclosure bars. *See Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1551 (11th Cir. 1996) ("[T]he term 'individual' does not ordinarily include a corporation."). Accordingly, the court will dismiss Omni's LIP-program and CARES-Act claims with prejudice. *See United States ex rel. Smith v. Odom*, No. 3:20cv3678-MCR-ZCB, 2023 U.S. Dist. LEXIS 143046, at *24–25 (N.D. Fla. June 22, 2023) (dismissing an amended complaint with prejudice because the public disclosure bars of the Federal and Florida False Claims Acts made further amendment futile); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when [a] complaint as amended is still subject to dismissal." (quotation omitted)).

Unlike Omni, Doe is an individual. (Dkt. ¶ 11.) As such, he could qualify as an original source. *Cf. Poteet*, 552 F.3d at 518 (suggesting that a John Doe plaintiff could have qualified as an original source if he had disclosed the relevant information to the government by the necessary time). The amended complaint alleges that Doe is an original source because he and Omni "made voluntary disclosures to the United States" before they filed this action. (Dkt. 11 ¶ 8.) The amended complaint does not

allege that Doe made any voluntary disclosures to the government prior to a public disclosure, nor does it provide the dates of Doe's disclosures such that the court could conclude that they preceded the July 2021 online article. (*See id. passim*.) Thus, Doe can be an original source only if his voluntary disclosures to the government contained information "that [wa]s independent of and materially add[ed] to" the relevant "publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). The amended complaint does not allege anything about the substance of Doe's voluntary disclosures or differentiate between Doe's disclosures and Omni's. (*See* Dkt. 11.) Although it conclusorily alleges that Omni and Doe engaged in "efforts to disclose substantial fraud . . . against government programs," the amended complaint does not state what those efforts were, how they resulted in the disclosures to the government, which disclosures were made by Doe as opposed to Omni, when Doe's disclosures to the government occurred, or crucially, what information was contained therein. (*Id.* ¶ 137.) Doe must plead facts supporting that he is an original source. *See United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, No. 22-10963, 2024 U.S. App. LEXIS 21493, at *16–18 (11th Cir. Aug. 26, 2024) (affirming a dismissal for failure to state a claim because the plaintiff did not establish that he was an original source); *see also id.* at *4 (observing that the "district court . . . flagged that [the plaintiff had to] properly plead that he was an original source of the allegations"). Because the amended complaint inadequately alleges that Doe is an original source, the court will dismiss Doe's LIP-program and CARES-Act claims. However, the court will allow Doe to replead the claims if he can, in good faith, add factual allegations supporting

that he is an original source.

### 3. Scienter and Materiality

The Parrish Defendants contend that Plaintiffs' LIP-program claims in Counts I and II should be dismissed with prejudice as futile because the amended complaint establishes that neither scienter nor materiality can exist as to those claims. (Dkt. 56 at 20–21.) According to the Parrish Defendants, because Plaintiffs "allege[] that AHCA approved the 2017 LIP[-program] reallocation transaction" and do not "alleg[e] that [the] approval was withdrawn or deemed inappropriate prior to the identically structured 2019 reallocation transaction, there can be no scienter or material violation as to either" transaction "regardless of whether, in [Plaintiffs'] view, AHCA was acting properly." (*Id.* at 20.) The Parrish Defendants argue that Plaintiffs' "criticism of AHCA . . . absolves" Defendants and that AHCA's initial approval and allegedly "inadequate oversight and guidance" mean that Defendants could not have knowingly asked the government to pay amounts that it did not owe. (*Id.* at 20–21 (emphasis omitted).) Omni responds that AHCA's initial approval does not defeat liability because Defendants "misrepresent[ed] the purpose of the transaction in the first instance." (Dkt. 62 at 16.)

As mentioned above, Count I asserts that Defendants violated 31 U.S.C. § 3729(a)(1)(A), (B), (C), and (G), (Dkt. 11 ¶ 140), and Count II asserts that Defendants violated the Florida equivalents of 31 U.S.C. § 3729(a)(1)(A), (B), and (C), (Dkt. 11 ¶ 144). To state a claim under 31 U.S.C. § 3729(a)(1)(A), "a complaint must allege (1) a false claim, (2) that the defendant[s] presented, or caused to be presented,

for payment or approval, (3) with knowledge that the claim was false." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023).  To state a claim under 31 U.S.C. § 3729(a)(1)(B), "a complaint must allege [that] (1) the defendant[s] made, or caused to be made, a false statement, (2) the defendant[s] knew the statement was false, and (3) the statement was material to a false claim." *84Partners*, 79 F.4th at 1359.  To state a claim under 31 U.S.C. § 3729(a)(1)(C), a complaint "must allege (1) an unlawful agreement between defendants to commit a violation of" the statute and "(2) an act performed in furtherance of the conspiracy." *United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 791 (11th Cir. 2018).  "[T]hat the United States suffered damages as a result" of the conspiracy may be another element.  *Id.* at 791 & n.4 ("It is not clear whether damages remain a required element . . . ."); *accord Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1319 n.28 (11th Cir. 2024).  For section 3729(a)(1)(A) and (B) claims, an "essential element" is "the actual presentment or payment of a false claim."  *84Partners*, 79 F.4th at 1360.  "Standing alone, a fraudulent scheme, no matter how egregious, is not enough; there must be an actual false claim."  *Id.*

Section 3729(a)(1)(G) "contains three theories of liability."[11]  *Miller v. United*

---

[11] Because section 3729(a)(1)(G) contains multiple theories of liability ((1) "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the [g]overnment," (2) "knowingly conceal[ing] . . . an obligation to pay or transmit money or property to the [g]overnment," and (3) "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the [g]overnment," 31 U.S.C. § 3729(a)(1)(G)), Plaintiffs shall not "lump[] together" multiple theories in one subsection (G) count when they replead; instead, they shall "narrow down and separate out [their] theories of liability" such that each asserted theory gets its own count in the amended pleading.  *See Chenault v. Seabulk Vessel Mgmt.*, No. 24-cv-60277-DAMIAN, 2024 U.S. Dist. LEXIS 99051, at *16 (S.D. Fla.

*States ex rel. Miller*, 110 F.4th 533, 542 (2d Cir. 2024). To state a claim under the first theory, a complaint must allege that (1) the defendants made, or caused to be made, a false statement, (2) the defendants knew the statement was false, and (3) the statement was material to an obligation to pay or transmit money or property to the United States. *See* 31 U.S.C. § 3729(a)(1)(G); *cf. 84Partners*, 79 F.4th at 1359. To state a claim under the second theory, a complaint must allege that (1) the defendants concealed an obligation to pay or transmit money or property to the United States, (2) the defendants knew of the obligation, and (3) the defendants knew of their violation of the obligation. *See* 31 U.S.C. § 3729(a)(1)(G); *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 436 (6th Cir. 2016). To state a claim under the third theory, a complaint must allege that (1) the defendants improperly avoided or decreased an obligation to pay or transmit money or property to the United States, (2) the defendants knew of the obligation, and (3) the defendants knew of their violation of the obligation. *See* 31 U.S.C. § 3729(a)(1)(G); *Harper*, 842 F.3d at 436. For all three theories, the complaint must "identify [the] obligation to re[]pay the government and allege other details of the claim with particularity." *Taul ex rel. United States v. Nagel Enters.*, No. 2:14-CV-0061-VEH, 2017 U.S. Dist. LEXIS 13566, at *33 (N.D. Ala. Feb. 1, 2017).

---

June 3, 2024); *see also Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."); *Ortiz v. Carnival Corp.*, Civil Action No. 20-24838-Civ-Scola, 2020 U.S. Dist. LEXIS 220954, at *2–4 (S.D. Fla. Nov. 24, 2020) ("Each distinct theory . . . is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." (collecting cases)).

The scienter element of Plaintiffs' claims refers to Defendants' required knowledge and is "actually quite nuanced." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015) (quoting *United States v. King-Vassel*, 728 F.3d 707, 712 (7th Cir. 2013)). "For liability to attach, [Plaintiffs] must show that [Defendants] acted 'knowingly,' which the [Federal False Claims] Act defines as either 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard.'" *Id.* (quoting 31 U.S.C. § 3729(b)(1)(A)). "[P]roof of a 'specific intent to defraud' is not required," *id.* (quoting 31 U.S.C. § 3729(b)(1)(B)), but "liability does not attach to innocent mistakes or simple negligence," *id.* (citing *King-Vassel*, 728 F.3d at 712). *See also* Fla. Stat. § 68.082(1)(c) (defining "knowingly" to encompass "actual knowledge," "deliberate ignorance," and "reckless disregard," providing that "[n]o proof of specific intent to defraud is required," and establishing "[i]nnocent mistake" as a defense). The Federal False Claims Act defines materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). This definition "focuses the [materiality] inquiry on 'the *effect* on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Marsteller ex rel. United States v. Lynn Tilton, Patriarch Partners, LLC*, 880 F.3d 1302, 1312 (11th Cir. 2018) (quoting *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016)). Unlike the Federal False Claims Act, the Florida False Claims Act does not explicitly mention materiality as a requirement for a false claim and thus does not define materiality. *See* Fla. Stat. § 68.081–.09.

In Counts I and II, Plaintiffs track statutory language and allege that Defendants

"knowingly" engaged in misconduct related to false claims.  (Dkt. 11 ¶¶ 140, 144.)  In Count I, Plaintiffs allege "material[ity]."  (*Id.* ¶ 140.)  Although the court agrees with Defendants that Plaintiffs do not adequately allege the counts, (*see* Dkts. 56 & 57), the court cannot conclude, based on the Parrish Defendants' argument about scienter and materiality, (Dkt. 56 at 20–21), that further amendment would be futile as to the LIP-program claims.  Dismissal with prejudice "is justified by futility" only when a "complaint as amended" would still be "subject to dismissal."  *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (quoting *Burger King*, 169 F.3d at 1320).  The Parrish Defendants' argument notwithstanding, a second amended complaint could still assert that Defendants knowingly made material misrepresentations when they sought payments from the government that the government did not owe.  *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) ("In the healthcare context . . . , '[t]he False Claims Act does not create liability merely for a health[]care provider's disregard of [g]overnment regulations or improper internal policies *unless*, as a result of such acts, the provider *knowingly asks the [g]overnment to pay amounts it does not owe*.'" (first bracketed alteration in original) (emphasis added) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002))).  As the Parrish Defendants point out, (Dkt. 56 at 21), the "scienter element refers to [Defendants'] knowledge and subjective beliefs." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023).  It is possible that Defendants subjectively knew that they were asking the government to make improper payments even if the payments had AHCA's approval, especially if Defendants took

advantage of AHCA's alleged "fail[ure] to provide adequate oversight" concerning the LIP program. (Dkt. 11 ¶ 36.)  Accordingly, the court will not dismiss the LIP-program claims with prejudice based on the Parrish Defendants' argument about scienter and materiality.

### 4.  Bad Faith

Finally, the Parrish Defendants maintain that because Plaintiffs, through their attorney, "admit that their Stark[-Act] allegations are deficient" but "argue otherwise to th[e] [c]ourt," Plaintiffs "waste . . . th[e] [c]ourt's resources" and engage in "bad[-]faith misconduct" warranting dismissal of their Stark-Act claims with prejudice.  (Dkt. 73 at 4 (emphasis omitted); *accord id.* at 5 ("[Plaintiffs'] actual knowledge of their deficient Stark[-Act] allegations[,] coupled with their rejection of an opportunity to file a curative pleading[] and their decision to stand on their defective pleading rather than request leave to amend from th[e] [c]ourt[,] is a waiver of any right to seek leave to amend as to the Stark[-Act] allegations." (emphasis omitted)).) Bad faith is a ground for denying leave to amend a pleading.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not . . . allow an amendment . . . where there has been . . . bad faith . . . .").  "Bad faith can be shown where 'an attorney knowingly or recklessly raises a frivolous argument or . . . delay[s] or disrupt[s] the litigation.'"  *Hall v. Merola*, 67 F.4th 1282, 1296 (11th Cir. 2023) (alterations adopted) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

In this case, one of Plaintiffs' four attorneys of record "inadvertently filed" Omni's response, (*see* Dkt. 63 at 1), with a comment indicating that another of the

attorneys believes that the Stark-Act "allegations do not appear specific enough in the amended complaint," (*see* Dkt. 62 at 15).  The court does not find bad faith from the comment because the position that Plaintiffs have sufficiently pleaded their Stark-Act allegations, albeit incorrect, was not frivolous when asserted and because Plaintiffs' attorneys may have reasonably disagreed—among themselves and with Defendants' counsel—about the strength of the allegations. *See Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1305 (11th Cir. 2021) (noting that a "claim, while properly rejected by the district court, was not frivolous" because the "claim was not wholly without foundation" and "[i]t was not unreasonable for [the plaintiff] to believe that" the defendant's alleged misconduct was actionable).  The comment itself demonstrates uncertainty about the allegations' weakness: it speaks in terms of "appear[ing]" insufficiently specific rather than being insufficiently specific.  (*See* Dkt. 62 at 15.)

Further, the court does not view the strategic decision to stand on the amended complaint rather than request leave to amend as an effort to delay or disrupt this litigation.  This order marks the first time that the court has advised Plaintiffs of pleading deficiencies in this case.  It was reasonable for Plaintiffs to wait to hear from the court before amending the amended complaint. *Cf. Est. of Hand ex rel. Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 U.S. App. LEXIS 328, at \*24–27 (11th Cir. Jan. 6, 2023) (focusing on the plaintiff's number of "attempt[s] to fix . . . deficienc[ies] *noted by the [c]ourt*" when explaining that a "repeated failure [to cure pleading deficiencies] was not a proper ground to deny [the plaintiff] leave to file [a] [t]hird [a]mended [c]omplaint" (emphasis added)); *Bryant*, 252 F.3d at 1163–64 ("The [a]mended

[c]omplaint was filed as a matter of course, and until the renewed motion to dismiss came before the court, the plaintiffs had not asked for leave to amend.  Therefore, it cannot be said that the plaintiffs already had been given an opportunity to amend or that the plaintiffs repeatedly had failed to cure deficiencies through previously allowed amendments.").

The Parrish Defendants support their bad-faith argument with two cases about a plaintiff's lack of candor.  (Dkt. 73 at 4–5.)  *See Jenkins v. Hutcheson*, No. 6:16-cv-59, 2016 U.S. Dist. LEXIS 127994, at *2 (S.D. Ga. Sep. 20, 2016) ("[T]he Eleventh Circuit has explained that district courts should not allow parties to cure their lack of candor with . . . after[-]the[-]fact amendments."); *Brown v. Churchwell*, No. 5:12cv22-MP-GRJ, 2012 U.S. Dist. LEXIS 112714, at *1 (N.D. Fla. Aug. 10, 2012) ("[The plaintiff's] lack of candor renders leave to amend the complaint inappropriate . . . .").  *Jenkins* and *Brown* are readily distinguishable, however, because each involved a pro se plaintiff's failure to truthfully disclose all his previous lawsuits as required by the court.  *See Jenkins*, 2016 U.S. Dist. LEXIS 127994, at *1–2; *Brown*, 2012 U.S. Dist. LEXIS 112714, at *1–2.  The comment by Plaintiffs' attorney does not demonstrate a similar lack of candor.  Accordingly, the Stark-Act allegations will not be dismissed with prejudice based on the bad faith of Plaintiffs or their counsel.

## CONCLUSION

Accordingly:

1. Defendants' motions to dismiss (Dkts. 56 & 57) are **GRANTED in part and**

- 31 -

**DENIED in part**.

2. Omni's claims based on the LIP program and CARES Act are **DISMISSED with prejudice** under the public disclosure bars of the Federal and Florida False Claims Acts.

3. The remaining claims in the amended complaint (Dkt. 11) are **DISMISSED without prejudice**.

4. On or before October 7, 2024, Plaintiffs may file a second amended complaint consistent with this order.  If they do, they shall fully comply with each of this order's directives in order to avoid a future shotgun pleading.

**ORDERED** in Orlando, Florida, on September 19, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record