IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA
and the STATE OF FLORIDA *ex rel.*
OMNI HEALTHCARE, INC. and
JOHN DOE,            Case No. 6:22-cv-00696-PGB-DCI

    Plaintiffs,

v.

NORTH BREVARD COUNTY
HOSPITAL DISTRICT d/b/a
PARRISH MEDICAL CENTER;
HALIFAX HOSPITAL MEDICAL;
CENTER; GEORGE
MIKITARIAN; CHRISTOPHER
McALPINE; ANUAL JACKSON,
SR.; ERIC PEBURN; and JEFF FEASAL,

    Defendants
_____/

**THE UNITED STATES OF AMERICA'S
STATEMENT OF INTEREST IN RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS (DKTS. 86 & 87)**

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which states that "any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States . . ." The statute allows the United States to "file a statement of interest, contains no time limitation and does not require the Court's leave." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317 (S.D. Fla. 2017).

Moreover, in a *qui tam* action under the False Claims Act (FCA), 31 U.S.C. §§ 3729-39, the United States remains a real party in interest in this matter, notwithstanding the fact that it has not intervened. *United States v. R&F Properties of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) ("The United States is the real party in interest in a *qui tam* action under the FCA even if it is not controlling the litigation." (quoting *United States ex rel. Dimartino v. Intelligent Decisions, Inc.,* 308 F. Supp. 2d. 1318, 1322 n. 8 (M.D. Fla. 2004)); *United States ex rel. Eisenstein v. city of New York*, 556 U.S. 928, 930 (2009). The FCA is the United States' primary tool used to redress fraud on the government and should be read broadly to reach all fraudulent attempts to cause the government to pay out sums of money. *United States v. Neifert-White*, 390 U.S. 228, 233 (1968). Accordingly, the United States has a substantial interest in the proper interpretation of the FCA.

The United States submits this Statement of Interest to address arguments that Defendants made in their Motions to Dismiss (Dkts. 86 & 87) ("Motions") relating to the constitutionality of the FCA's *qui tam* provisions.[1]

Defendants previously moved to dismiss the Relator's Complaint (Dkts. 56 & 57), which this Court granted in part and denied in part (Dkt. 80). Relator filed an

---

[1] If the court does not plan to reject the constitutional challenge, the United States requests that the court certify the question to the Attorney General pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(a) so that the Attorney General has the opportunity to consider whether to intervene in the action. *See* Fed. R. Civ. P. 5.1(c) (district court can "reject [a] constitutional challenge" without affording the government an opportunity to intervene, but cannot "enter a final judgment holding [a] statute unconstitutional" without providing that opportunity).

Amended Complaint (Dkt. 83) and the Defendants have now filed their Motions. In their filings, Defendants raise an argument that the Relator is not properly appointed under the constitution. The purpose of this Statement of Interest is to address that argument; the United States takes no position on the other arguments raised by Defendants in their Motions.

**I.       The FCA's *Qui Tam* Provisions are Constitutional.**

Defendants' Motions each devote a single paragraph to asserting that the *qui tam* provisions of the FCA are unconstitutional. (Dkts. 86 at 26, 87 at 9). Defendants argue that the Relator's prosecution of this declined *qui tam* case represents an impermissible delegation of Executive power to a private party. But courts consistently have rejected such arguments, recognizing that the FCA's *qui tam* provisions are consistent with the constitutional structure. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148 (2d Cir. 1993). This Court should hold likewise.

When Congress enacted the FCA in 1863, it included *qui tam* provisions, following a "long tradition of [such] actions in England and the American Colonies." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). These provisions allow private individuals, known as relators, to bring suit

"for the person and for the United States Government" against "[a]ny person" who defrauds the government. *Id.* at 769 (quoting 31 U.S.C. §§ 3729(a), 3730(b)(1)). If the suit is successful, the relator is entitled to a share of the recovery. *Id.* at 769-70. The FCA has become "the government's 'primary litigative tool for combatting fraud,'" with the FCA's *qui tam* provisions serving "as a critical supplement to government enforcement." *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (quoting S. Rep. No. 99-345, at 2, 4 (1986)).

At its core, the separation of powers doctrine focuses on "the allocation of official power among the three coequal branches of our Government." *See Clinton v. Jones*, 520 U.S. 681, 699 (1997). "[I]n determining whether [legislation] disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977). Courts repeatedly have held that *qui tam* actions do not upset such a balance.

*Qui tam* relators are private litigants. The Supreme Court has expressly declined to adopt a theory that they sue as "agent[s] of the United States." *Stevens*, 529 U.S. at 772. Their Article III standing exists due to a "concrete *private* interest in the outcome of the suit" that arises from Congress's "partial assignment of the Government's damages claim" to them. *Id.* at 772-73 (alteration accepted and emphasis added). While relators bring *qui tam* actions "in the name of the

4

Government," 31 U.S.C. § 3730(b)(1), this is a procedural practice that does not alter their status as private litigants with private interests. *See Stevens*, 529 U.S. at 780-81 n.9, 786 n.17 (actions pursued by relators are "private suit[s]" brought by "private parties."). Relators are not transformed into "official[s] of the United States" merely because, in pursuit of their own interests, they further a federal interest in remedying and deterring fraud on the United States. *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1514 (2019) ("§ 3731(b)(2)'s use of the definite article 'the' suggests that Congress did not intend for any and all private relators to be considered 'the official of the United States.'").

The deep historical roots of *qui tam* provisions confirm that the FCA does not violate the separation of powers. "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943) (citation omitted). In *Stevens*, the Supreme Court reviewed this "long tradition of *qui tam* actions in England and the American Colonies," as well as the "considerable number" of statutes with *qui tam* provisions passed by the First Congress. *See Stevens*, 529 U.S. at 774-77. The Court found this evidence "well nigh conclusive" in establishing that *qui tam* relators have Article III standing. *Id.* at 777.

The historical evidence is also highly relevant to the constitutional question presented here. *See Riley*, 252 F.3d at 752 (finding it "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to *qui tam* lawsuits initiated under the FCA is similarly conclusive with respect to the Article II question concerning this statute").

The First Congress enacted numerous *qui tam* provisions, thus making clear that the Framers did not believe relators were performing functions that only federal officers could properly perform. *See Bowsher v. Synar*, 478 U.S. 714, 723-24 (1986) (acts of the First Congress "provide[] contemporaneous and weighty evidence of the Constitution's meaning since many of the Members of the First Congress had taken part in framing that instrument") (quotation marks omitted). And the long tradition of *qui tam* actions in the United States after the Framing provides "additional evidence that the doctrine of separated powers does not prohibit" this unique practice, given that "'traditional ways of conducting government . . . give meaning' to the Constitution." *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952) (Frankfurter, J., concurring)); *see also NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559-60 (2014).

Courts rejecting constitutional challenges to the FCA have also observed that the United States retains significant control over *qui tam* suits, *see Riley*, 252 F.3d at 753-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 753-55; *Kreindler & Kreindler*, 985 F.2d at 1155, a point that the Supreme Court also recently

6

underscored. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 143 S. Ct. 1720, 1729 n.2, 1734 (2023). If the government intervenes in a *qui tam* suit, "the relator loses control" and the action is "'conducted by the Government.'" *Id.* at 1728 (quoting 31 U.S.C. § 3730(b)(4)(A)). And even where the government initially declines to intervene, the Supreme Court confirmed in *Polansky* that it may intervene at a later time and move to dismiss the relator's claims. *Id.* at 1732, 1734. Such motions are subject to highly deferential review under Federal Rule of Civil Procedure 41(a); indeed, the Supreme Court emphasized that district courts must grant dismissal "in all but the most exceptional cases"—"even if the relator presents a credible assessment to the contrary," *Polansky,* 143 S. Ct. at 1734.

Beyond the government's broad dismissal authority, the FCA also provides the Executive with an array of tools for protecting the government's interests in cases where it does not intervene. The government can "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5). It can settle a *qui tam* action over the relator's objection. *See id.* § 3730(c)(2)(B). If it instead permits the *qui tam* action to proceed, the government is entitled to, among other things: (1) receive copies of all pleadings and deposition transcripts; (2) move to stay any discovery by the relator that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts"; and (3) prevent the relator from dismissing or settling a case without the government's approval. § 3730(b)(1), (c)(3), (4). And because the first-to-file bar and

the public disclosure bar do not apply to the government, the government can bring its own action even after a relator's suit is dismissed, subject to principles of claim preclusion. *See* 31 U.S.C. § 3730(b)(5), (e)(4). Courts rejecting separation-of-powers concerns to the *qui tam* provisions have noted all these mechanisms of "executive control." *Kelly*, 9 F.3d at 750-55; *see also, e.g.*, *Riley*, 252 F.3d at 753; *Taxpayers Against Fraud*, 41 F.3d at 1041.

The Defendants' citation of the recent decision of a single district court in *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024), provides no sound basis to depart from the longstanding consensus among the courts of appeals. The district court based its analysis on the premise that, when relators bring FCA suits, they are suing on behalf of the United States in the exercise of "core executive power." *Id.* at *8. But as described above, *qui tam* suits are private claims, pursuing the relator's interest in a share of the recovery as partially assigned by the government. The *Zafirov* court further erred in concluding that relators occupy an "office" akin to that of the Attorney General, which may vary from occupant to occupant. 2024 WL 4349242, at *11. Whereas only one person holds the office of Attorney General at any given time, there are many relators, and a statute empowering an indeterminate number of private citizens to exercise certain powers does not create an "office." This error of the district court is further underscored by the fact that when a relator dies, his estate may be substituted in his place, *id.* at *14, which is obviously not true for an "office" in the United States government. Finally, even while acknowledging that "early Congresses enacted at

8

least some statutes containing an enforcement mechanism roughly analogous to the FCA." *id.* at *17, the court improperly discounted the weight of this Founding-era evidence and also failed to square it with the Supreme Court's reliance on those early statutes in *Stevens*.

For these reasons, the FCA's *qui tam* provisions are consistent with the Constitution's separation of powers. Accordingly, if the Court reaches the Defendants' constitutional arguments, it should reject them, as every federal Circuit Court to decide the issue has done.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ROGER B. HANDBERG
United States Attorney

By:   /s/ Jeremy R. Bloor
JEREMY R. BLOOR
Assistant U.S. Attorney
Florida Bar No. 0071497
U.S. Attorney's Office
400 West Washington St., Suite 3100
Orlando, FL 32801
Tele. (407) 648-7500
Fax (407) 648-7588
Jeremy.Bloor@usdoj.gov

s/Jessica R. Sievert
JAMIE ANN YAVELBERG
ALISON B. ROUSSEAU
JESSICA R. SIEVERT
Attorneys

9

        Civil Division, Commercial Litigation Branch
U.S. Department of Justice
PO Box 261, Ben Franklin Station
Washington, DC 20044
Tel: (202) 993-5190