UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAIG DELIGDISH,

     Plaintiff,

v.                                         Case No: 6:22-cv-696-JSS-DCI

NORTH BREVARD COUNTY
HOSPITAL DISTRICT, GEORGE
MIKITARIAN, CHRISTOPHER
MCALPINE, ANUAL JACKSON,
SR., and HALIFAX HOSPITAL
MEDICAL CENTER TAXING
DISTRICT,

     Defendants.
_____/

## ORDER

Defendants, George Mikitarian, Christopher McAlpine, Anual Jackson, Sr., North Brevard County Hospital District d/b/a Parrish Medical Center (Parrish and, together with Mikitarian, McAlpine, and Jackson the Parrish Defendants), and Halifax Hospital Medical Center Taxing District d/b/a Halifax Health move to dismiss Plaintiff's second amended complaint.  (Dkts. 86, 87, 97, 99.)  Plaintiff, Craig Deligdish, opposes the motions.  (Dkt. 91.)  Having considered the magistrate judge's report and recommendation (Dkt. 108), the objections thereto (Dkts. 112–14), and the responses to the objections (Dkts. 116–18), the court grants Defendants' motions in part and denies them in part.

## BACKGROUND

Plaintiff is an oncologist and the principal of OMNI Healthcare, Inc., "a multi-specialty physician group based in Brevard County, Florida." (Dkt. 83 at 4.) Defendant Parrish is "an independent special taxing district" in Brevard County that operates a "community hospital[,] . . . an affiliated medical group[—]Parrish Medical Group," or PMG—and "related support services." (*Id.*) Defendants Mikitarian, McAlpine, and Jackson are executives at Parrish. (*Id.* at 4–5.) Defendant Halifax is "a legislatively-chartered taxing healthcare organization governed by a Board of Commissioners who are appointed by the Governor of Florida." (*Id.* at 5.)

Florida's Low-Income Pool (LIP) program "reimburses hospitals and providers for the cost of care given to Florida's most vulnerable patients." (*Id.* at 2–3.) *See* Op. Att'y Gen. Fla. 2009-06 (2009), 2009 WL 364879, at *1, 2009 Fla. AG LEXIS 7, at *4 ("In 2006, the State of Florida established the [LIP] program as one of the components of a broad-ranging reform of the Florida Medicaid Program. The program is a joint federal-state program requiring funding from both federal and . . . non-federal sources."). The Coronavirus Aid, Relief, and Economic Security (CARES) Act aims to provide federal relief for persons negatively affected by the Covid-19 pandemic and prohibits "physician groups [from] receiv[ing] government funding for services already covered by other C[ovid-19] relief programs." (Dkt. 83 at 2.) *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The Stark Act "makes it illegal for hospitals to compensate referring physicians based on the value and volume of referrals for designated health services." (Dkt. 83 at 2.) *See* Stark Act, 42 U.S.C. § 1395nn.

Plaintiff alleges that Halifax and Parrish entered into a pair of interlocal agreements—the first in 2017 and the second in 2019—to unlawfully avoid returning government funds.  (Dkt. 83 at 16–20.)  Plaintiff further alleges that Defendants "colluded to defraud LIP, knowing the interlocal agreements were improper and, in doing so, submitted false and/or fraudulent claims for payment to the United States and the State of Florida, and/or improperly avoided an obligation to return funds to the [g]overnment."  (*Id.* at 3.)  Plaintiff also claims that Parrish "defrauded the [g]overnment by requesting, receiving, and improperly retaining CARES Act funds" and "violated the Stark [Act]" by "compensating physicians in excess of fair market value based on the . . . volume of their referrals." (*Id.* at 32, 49.)

On February 1, 2022, Plaintiff initiated this case in the Northern District of Florida as relator of the United States and Florida.  (*See* Dkt. 1 at 1.)  The qui tam complaint claimed violations of the Federal False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, the Florida False Claims Act (FFCA), Fla. Stat. §§ 68.081–.09, and the Stark Act, and retaliation under the FCA in violation of 31 U.S.C. § 3730(h). (Dkt. 1 at 30–32.)  On April 15, 2022, this case was transferred to this district based on the parties' stipulation.  (*See* Dkts. 5, 6.)  *See* 28 U.S.C. § 1404(a).  On August 10, 2022, Plaintiff filed an amended qui tam complaint that was largely identical to the original with minor alterations and additions.[1]  (*Compare* Dkt. 1, *with* Dkt. 11.)  On September

---

[1] Prior to the filing of the second amended complaint, the parties to this case included OMNI and John Doe (an executive at OMNI) as Plaintiffs, and Jeff Feasal and Eric Peburn (executives at Halifax) as additional Defendants.  (*See* Dkt. 11 at 3–5.)  Deligdish appears to have been the John Doe Plaintiff. Both were executives at OMNI, (*see* Dkt. 11 at 4, 30), and the court dismissed certain claims in the

6, 2023, the United States and Florida notified the court of their decision not to intervene in this case. (*See* Dkt. 26.) They requested that the court "solicit [their] written consent" before ruling on any motion to dismiss, (*id.* at 2), and the court granted the request, (Dkt. 27 at 2).

Defendants moved to dismiss the amended complaint arguing, among other things, that it was an impermissible shotgun pleading. (*See* Dkts. 56, 57.) The court granted those motions in part and denied them in part. (*See* Dkt. 80.) As to former plaintiff OMNI, the court dismissed the LIP-program and CARES-Act claims with prejudice because they were precluded by the public disclosure bars of the FCA and FFCA, but as to Plaintiff, the court permitted repleading if Plaintiff could "in good faith[] add factual allegations supporting that he is an original source." (*Id.* at 23–24, 32.) The rest of the claims were dismissed without prejudice, and while Defendants requested dismissal with prejudice, the court was required to give Plaintiff an opportunity to replead. (*See* Dkts. 56, 57, 73; Dkt. 80 at 11, 32.) *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun[-]pleading grounds."). In its order dismissing the amended complaint, the court provided detailed instructions to avoid a future shotgun

---

amended complaint with prejudice, but subject to repleading if Doe could add allegations "supporting that he is an original source," (Dkt. 80 at 23–24), which the second amended complaint alleges Deligdish is, (Dkt. 83 at 6).

pleading.  (*See* Dkt. 80 at 7 n.5, 11–18 & nn. 6–8, 25 n.11.)  The court expressly
cautioned Plaintiff that he must "fully comply with each of th[e] order's directives in
order to avoid a future shotgun pleading."  (*Id.* at 32.)

Plaintiff timely filed his second amended complaint, raising fourteen counts.
(*See* Dkt. 83.)  Counts one through four allege violations of the FCA related to the LIP
program against all Defendants.  (*Id.* at 36–40.)  Count five alleges violations of the
FFCA against all Defendants.  (*Id.* at 41–42.)  Counts six through nine allege violations
of the FCA related to the CARES Act against "Parrish Defendants."  (*Id.* at 43–48.)
Counts ten through thirteen allege violations of the FCA and the Stark Act against
Parrish, (*id.* at 48–54), and count fourteen alleges a violation of the FCA's anti-
retaliation provision against Parrish and Mikitarian.[2]  (*Id.* at 54–56.)  Defendants move
to dismiss the second amended complaint.  (*See* Dkts. 86, 87.)  Plaintiff has filed a
response, (Dkt. 91), and Defendants, with the court's permission, have filed replies,
(*see* Dkts. 92–95, 97, 99).

The court referred Defendants' motions to dismiss to the magistrate judge for
entry of a report and recommendation.  (Dkt. 94.)  The magistrate judge recommends
granting the motions in part and denying them in part by dismissing counts one, two,
five through nine, and fourteen with prejudice and dismissing the remaining counts
without prejudice.  (Dkt. 108 at 48.)  All parties filed objections to the report and
recommendation and responses to the objections, (Dkts. 112–14; *see* Dkts. 116–18).

---

[2] The second amended complaint misnumbers count fourteen as "Count IX."  (*See* Dkt. 83 at 54.)

While the magistrate judge was considering Defendants' motions to dismiss, Plaintiff filed a motion to stay discovery, which the magistrate judge denied.  (Dkts. 104, 111.)  Plaintiff seeks review of that order, (Dkt. 115), and the Parrish Defendants respond to Plaintiff's position, (Dkt. 119).

## APPLICABLE STANDARDS

After conducting a careful and complete review of the findings and recommendations, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72.  With respect to non-dispositive matters, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020).  For dispositive matters, the district judge must conduct a de novo review of any portion of the report and recommendation to which a timely objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009) ("A district court makes a de novo determination of those portions of a magistrate's report to which objections are filed.").  Even in the absence of a specific objection, the district judge reviews any legal conclusions de novo.  *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count." *Id.* "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b).  To meet this particularity requirement,

the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under Federal Rule of Civil Procedure 16, once the court sets a schedule of case management deadlines, the "schedule may be modified only for good cause and with the [court]'s consent." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quotation omitted).

## ANALYSIS

No party objects to the magistrate judge's recommendation that counts one, two, and fourteen be dismissed with prejudice, so the court adopts that recommendation without further analysis. (*See* Dkt. 108 at 9–18, 43–48; Dkts. 112–14.) With regard to the remainder of Plaintiff's claims, the court first analyzes counts three through five, counts six through nine, and counts ten through thirteen. The court then addresses Defendants' position that the magistrate judge erred in rejecting their

Appointments Clause argument.  (*See* Dkt. 112 at 11; Dkt. 113 at 3.)  The court

concludes by considering the magistrate judge's order denying Plaintiff's motion to

stay.  (*See* Dkts. 104, 111.)

## A.  Counts Three Through Five—FCA and FFCA Claims

Counts three through five assert violations of the FCA and the FFCA related to

the LIP program against all Defendants.  (Dkt. 83 at 38–42.)  The court first considers

counts three and four together before turning to count five.  The court concludes this

section by considering Halifax's argument that these claims are barred under the FCA

and FFCA's public disclosure bars.  (*See* Dkt. 112 at 6–11.)

### 1.  Count Three—Conspiracy Pursuant to 31 U.S.C. § 3729(a)(1)(C); Count Four—Violation of 31 U.S.C. § 3729(a)(1)(G)

In count three, Plaintiff alleges that Defendants violated 31 U.S.C.

§ 3729(a)(1)(C) by conspiring to violate 31 U.S.C. § 3729(a)(1)(A), (B), and (G).  (Dkt.

83 at 38–39.)  In count four, Plaintiff alleges that Defendants violated 31 U.S.C.

§ 3729(a)(1)(G).  (Dkt. 83 at 39–40.)  The magistrate judge recommends dismissal of

both counts without prejudice.  (Dkt. 108 at 18–27.)

With regard to the alleged violation of section 3729(a)(1)(G), the court's

previous order noted that this section contains three discrete theories of liability.  (*See*

Dkt. 80 at 25–26 & n.11.)  Those theories are (1) "knowingly mak[ing], us[ing], or

caus[ing] to be made or used, a false record or statement material to an obligation to

pay or transmit money or property to the [g]overnment," (2) "knowingly

conceal[ing] . . . an obligation to pay or transmit money or property to the

[g]overnment," and (3) "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the [g]overnment."  31 U.S.C. § 3729(a)(1)(G).  Plaintiff was expressly directed to separate his section 3729(a)(1)(G) claims in the second amended complaint "such that each asserted theory gets its own count in the amended pleading."  (Dkt. 80 at 25 n.11.)  Because the second amended complaint fails to comply with the court's clear directive, the magistrate judge recommends that count four be dismissed.  (Dkt. 108 at 23.)

Plaintiff objects, arguing that the second amended complaint "clearly limits his legal theory [under section 3729(a)(1)(G)] to one," obviating any "need to split up the theories."  (Dkt. 114 at 2–6.)  That is not so.  Count four includes the following allegation:

> Defendants made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the [g]overnment, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the [g]overnment.

(Dkt. 83 at 40.)  This language, incorporating all three theories of liability supported by section 3729(a)(1)(G), runs afoul of the court's prior order.  *See also Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").

Turning to count three, the court first notes that this claim is subject to Rule 9(b)'s heightened pleading standard.  *See United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 791 (11th Cir. 2018) ("Rule 9(b)'s heightened pleading standard applies to

claims brought under the conspiracy provision [of the FCA]." (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005))).  The magistrate judge recommends dismissal of Plaintiff's claims of conspiracy to violate sections 3729(a)(1)(A) and (B) because "Plaintiff has not alleged that Defendants conspired to present false claims to the [g]overnment for payment."  (Dkt. 108 at 25–26.)  *See Corsello*, 428 F.3d at 1014 (affirming dismissal of conspiracy claim where the "bare legal conclusion" that the defendants "conspired to defraud the [g]overnment" was not supported by "specific allegations of any agreement or overt act").  Plaintiff does not object to this recommendation, (*see* Dkt. 114), so the court adopts it without further analysis.[3]

With respect to Plaintiff's claim of a conspiracy between Defendants to violate section 3729(a)(1)(G), the magistrate judge determined that "Plaintiff alleges facts . . . that indicate that Plaintiff could state a claim for conspiracy to commit a violation of" that section. (Dkt. 108 at 26.)  However, because Plaintiff does not clarify which of section 3729(a)(1)(G)'s three discrete theories of liability serve as the basis for the conspiracy count, the magistrate judge recommends that like count four, count three be dismissed without prejudice.  (*Id.*)  Plaintiff objects on the basis that the second amended complaint, "when considered as a whole[,] provides adequate notice as to which factual allegations establish which theories of liability in terms of conspiracy to violate . . . [section] 3729(a)(1)(G)."  (Dkt. 114 at 6.)   The court overrules this

---

[3] While Plaintiff objects to the dismissal of count three, he argues only that this count should not be dismissed because he has properly alleged a conspiracy to violate section 3729(a)(1)(G), not section 3729(a)(1)(A) or (B).  (*See* Dkt. 114 at 6.)

objection for the same reason it overrules his objection as to count four—the second amended complaint does not separate the theories of liability as the court ordered. (*See* Dkt. 83 at 40.)

Defendants object to the dismissal of counts three and four without prejudice, contending that dismissal should be with prejudice due to Plaintiff's blatant failure to cure the deficiencies identified by the court. (Dkt. 112 at 3–6; Dkt. 113 at 6–8.) "[R]epeated failure to cure deficiencies by amendments previously allowed" does furnish a basis for dismissal of a complaint without leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the court previously dismissed Plaintiff's amended complaint based on pleading deficiencies and provided express instructions for repleading, that was the court's first time doing so. (*See* Dkt. 80.) Accordingly, Plaintiff's failure to cure the deficiencies in his first amended complaint with his second amended complaint does not demonstrate a repeated failure to cure and thus does not warrant dismissal with prejudice. Further, the magistrate judge determined that Plaintiff's allegations may support a claim under sections 3729(a)(1)(C) and (G). (Dkt. 108 at 23, 26–27.) *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Accordingly, counts three and four are dismissed without prejudice.

### 2. Count Five—Violation of the FFCA

In count five, Plaintiff alleges that Defendants violated sections 68.082(2)(a)–(c) and (g) of the FFCA. (Dkt. 83 at 41–42.) The court previously dismissed Plaintiff's

FFCA claim, included under count two of the amended complaint, on shotgun
pleading grounds because that count was "brought under multiple subsections of
the . . . [FFCA]." (Dkt. 80 at 13.) The court expressly counseled Plaintiff not to repeat
this error. (*Id.* at 14 ("When repleading the [FFCA] claims . . . , Plaintiff[] shall list
each cause of action into a separately numbered count, with one legal theory per count,
and a specifically named defendant or defendants per count." (quotation omitted)).
Because Plaintiff failed to heed this directive, the magistrate judge recommends
dismissing count five with prejudice. (*See* Dkt. 108 at 43.) *See Bryant v. Dupree*, 252
F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not . . . allow an
amendment . . . where there has been . . . repeated failure to cure deficiencies by
amendments previously allowed . . . .").

Plaintiff objects that count five gives adequate notice to Defendants and
therefore should not be dismissed. (Dkt. 114 at 5–6.) The court dismisses count five
because it does not comply with the court's directive to separate the FFCA claims into
different counts for clarity's sake. However, the court grants Plaintiff leave to amend
count five for the same reasons as counts three and four—the court has dismissed his
FFCA claims only once before, and his allegations may support claims under the
FFCA.

### 3. The Public Disclosure Bars

Halifax maintains that counts one through five should be dismissed with
prejudice because they are barred by the public disclosure bars of the FCA and FFCA.
(Dkt. 112 at 6–11.) Essentially, Halifax submits that leave to amend would be futile.

(*Id.*)  The court overrules this objection because it agrees with the magistrate judge that the public disclosure bars do not apply.

The FCA "prohibits lawsuits where the allegations in the complaint are 'substantially the same' as . . . allegations or transactions contained in public disclosures, unless the plaintiff is an original source."  *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 (11th Cir. 2015) (quoting 31 U.S.C. § 3730(e)(4)). This prohibition—the FCA's public disclosure bar—applies if "the allegations made by the plaintiff [have] been publicly disclosed" and "the disclosed information [is] the basis of the plaintiff's suit," unless "the plaintiff is an original source of that information."  *Id.* (quotations omitted).  The FFCA has a similar bar, and indeed, the two bars are analyzed in the same way.  *See Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 719 n.1 (11th Cir. 2012) ("The district court found the FFCA tracked the [FCA] and applied the same analysis for both.  [The r]elators do not dispute this conclusion, and thus, [the court's] analysis applies equally to the [FFCA] and [FCA] claims.").[4]  For purposes of the bars, an original source includes any individual who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the [g]overnment before filing an action under this section."  31 U.S.C. § 3730(e)(4)(B).

Plaintiff asserts that on June 17, 2021, via phone or email, he described

---

[4] The magistrate judge did not have reason to perform a public disclosure bar analysis for count five. (*See* Dkt. 108 at 34 n.13.)  However, the magistrate judge noted that FFCA claims "are subject to the same public disclosure bar analysis as FCA claims."  (*Id.*)  Halifax agrees with this conclusion.  (*See* Dkt. 112 at 6 n.9.)

Defendants' "transaction to [the United States Department of Health and Human Services and the United States Office of the Inspector General]." (Dkt. 83 at 6.) Halifax argues that the information Plaintiff shared was publicly disclosed in a June 22, 2021 complaint filed in Brevard County, Florida, the media coverage surrounding that complaint, which began on June 22, 2021, and the interlocal agreements themselves, filed with the Brevard County Clerk in 2017 and 2019. (*See* Dkt. 86 at 16–18.) Plaintiff's disclosure to the government preceded the Brevard County complaint and the media coverage surrounding it, so the only issue is whether the disclosure materially added to and was independent of the interlocal agreements such that Plaintiff constitutes an original source.

The June 17, 2021, disclosure states that the interlocal agreements seemed to violate the FCA and that

> it appears that Halifax and Parrish conspired [to] game the system whereby hospitals receive state and federal money for providing care to low[-]income patients. In doing so, they also appear to have conspired to launder government money and use these monies to fund projects for which the monies were not intended. The communications and internal memos between the two institutions indicate that they were aware of the risk of this conduct, understood that it was against the law and were aware that this conduct was done without proper authorization from government agencies. . . . It has also come to our attention that Parrish was advised by [its] attorneys that this conduct may have been in violation of the law. Yet, Dr. Mikitarian[] ignored this advice and found attorneys who suggested that Parrish could probably "get away with it[.]"

(Dkt. 91-2 at 2–3.)[5]  The magistrate judge concludes that Plaintiff's disclosure materially adds to and is independent of the interlocal agreements, which, naturally, did not indicate that Defendants were intending to use the interlocal agreements to misappropriate government funds.  (*See* Dkt. 108 at 39.)

Halifax contests this conclusion, submitting that the allegations in Plaintiff's disclosure are "nothing more than conjecture" and that his claims are conclusory and fail to satisfy federal pleading standards.  (*See* Dkt. 112 at 8–11.)  First, while Plaintiff's disclosure is light on facts, it nevertheless materially adds to the interlocal agreements because it claims that those agreements were knowingly being used as a mechanism to misappropriate money and defraud the government.  (*See* Dkt. 91-2 at 2–3.)  The cases Halifax cites to support its argument are readily distinguishable, as the relators in those cases merely added background information regarding false claims that could already be identified through publicly available information.  (*See* Dkt. 112 at 10–11.)  *See Osheroff*, 776 F.3d at 815 ("[The relator]'s information does not materially add to the public disclosures, which were already sufficient to give rise to an inference that the clinics were providing illegal remuneration to patients."); *United States ex rel. Lewis v. Walker*, 438 F. App'x 885, 888 (11th Cir. 2011) (reasoning that relators were not "original sources" where they only compiled public information "available to anyone

---

[5] Halifax argued in its reply that the court could not consider the contents of this disclosure at the motion to dismiss stage.  (*See* Dkt. 96 at 2–3 & n.3.)  The magistrate judge nevertheless considered the disclosure under the incorporation by reference doctrine, (*see* Dkt. 108 at 36–37), and no party has raised an objection to the application of this doctrine, (*see* Dkts. 112–14).  In any event, the court agrees that the doctrine applies.  *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (holding that documents may be considered under the incorporation by reference doctrine if they are "central to the plaintiff's claims" and "undisputed").

who wished to use it for the same purpose"); *United States ex rel. Zafirov v. Fla. Med. Assocs. LLC*, No. 8:19-cv-1236-KKM-SPF, 2021 WL 4443119, at *7–8 (M.D. Fla. Sept. 28, 2021) (determining that what had been publicly disclosed was already "enough to give rise to an inference of the same alleged fraud in th[at] case" and noting that "mere background information that helps the public better understand or contextualize a public disclosure is not enough to find that a relator qualifies as an original source"). Further, Halifax provides no caselaw to support its argument that, in order to materially add to a public disclosure, information must satisfy federal pleading standards. (*See* Dkt. 112 at 10 & n.11.) To the extent that Halifax argues that the disclosure's allegations are not plausible, the court disagrees. To the extent that it argues for particularity, that heightened standard does not apply to the original source inquiry. Indeed, the Eleventh Circuit has simultaneously held that an individual qualified as an original source but did not plead fraud with particularity. *See Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568–69 (11th Cir. 1994). Accordingly, Halifax's objections are overruled as to these counts.

## B. Counts Six Through Nine—Violations of the FCA

In counts six through nine, Plaintiff alleges violations of the FCA related to the CARES Act against the "Parrish Defendants," as that group is defined in the second amended complaint. (Dkt. 83 at 43–48.) The court cannot determine which Defendants this designation is intended to refer to, but Plaintiff attempts to define and group Defendants as follows:

Halifax Hospital Medical Center Taxing District d/b/a

> Halifax Health ("Halifax"), North Brevard County Hospital District d/b/a Parrish Medical Center ("Parrish"), George Mikitarian, Christopher McAlpine, and Anual Jackson, Sr.[] (collectively, the "Parrish Defendants") (collectively "Defendants") . . . .

(*Id.* at 1.)  The court agrees with the Parrish Defendants and the magistrate judge that this manner of defining the "Parrish Defendants" prevents the court from determining, without speculation, which Defendants counts six through nine are alleged against. (*See* Dkt. 87 at 22–23; Dkt. 108 at 41–43.)  The "Parrish Defendants," as per Plaintiff's definition, may refer to Mikitarian, McAlpine, and Jackson either alone or in addition to Parrish.  (*See* Dkt. 108 at 42 ("Plaintiff's list of defined terms uses commas to separate the defined terms from one another and to separate the individual Defendants included in each defined term.  This [practice] leaves room for ambiguity, particularly as to whether [Parrish] is included in the 'Parrish Defendants' grouping for [c]ounts [six] through [nine]." (internal citation omitted)).)

The magistrate judge notes that further confusion is caused by Plaintiff's including in count eight allegations against "Defendants"—a term Plaintiff defined to include *all* Defendants—and by Plaintiff's alternating between "Parrish Defendants" and "Parrish" in count nine.  (Dkt. 108 at 42–43; *see* Dkt. 83 at 1, 46–48.)  Because the court cannot determine which Defendants counts six through nine are asserted against, those counts are due to be dismissed.  *See Weiland*, 792 F.3d at 1323 (classifying as shotgun pleadings complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

Plaintiff's objection only amplifies the confusion created by the second amended complaint because his objection fails to clarify whether these counts are intended to be asserted against Parrish, alone, or all the Parrish Defendants, together.

> [T]he [second amended complaint] makes absolutely clear that the CARES Act . . . claims are directed exclusively at Parrish *and the officers [Plaintiff] understands to have been the orchestrators of the C[ARES] Act fraud*. No plausible confusion can be argued nor guesswork needed to be on notice that the CARES Act claims are alleged *against Parrish*. [Plaintiff] concedes that the allegations directed at Mikitarian, McAlpine, and Jackson are notably less specific than those against Parrish, but the [c]ourt can address that deficiency . . . by dismissing those defendants while upholding the claims against the very clear perpetrator of the fraud, through which they acted.

(Dkt. 114 at 7–8 (emphasis added).)  Plaintiff also concedes that the magistrate judge's confusion regarding Plaintiff's including allegations against "Defendants" in count eight and alternating between "Parrish" and "Parrish Defendants" in count nine is "understandable."  (*Id.* at 8 ("The term 'Defendants' was intended to merely refer to defendants generically (with an inadvertently capitalized 'd[]') . . . .").)  Inadvertent or not, Plaintiff's failure to clarify which claims are brought against which Defendants warrants dismissal of counts six through nine.

Plaintiff resists this conclusion by arguing that the magistrate judge "failed to analyze the [second amended complaint] as a whole."  (*Id.* at 6.)  The allegations outside of counts six through nine are irrelevant, however, because the words used within those counts render them facially ambiguous as to which Defendants they assert claims against.  Accordingly, the caselaw relied upon by Plaintiff—dealing with

arguments that the underlying pleadings contained insufficient allegations—is inapposite. (Dkt. 114 at 6.) *See Magluta v. Samples*, 375 F.3d 1269, 1273–74 (11th Cir. 2004) ("In dismissing [the plaintiff]'s due process claim . . . , the district court found that [the plaintiff] had failed to allege facts to show that the conditions of his confinement were imposed as a punishment."); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) ("[The defendant] cannot say that it did not receive fair notice of the torture claim just because the language about lasting mental trauma was placed in another section of the complaint.").

However, as with counts three through five, the court dismisses these counts without prejudice. The Parrish Defendants submit that leave to amend counts six through nine should be denied because amendment would be futile due to the FCA's public disclosure bar. (Dkt. 113 at 8–9.) The magistrate judge has not considered the Parrish Defendants' argument regarding the public disclosure bar because their motion failed to present that argument. (*See* Dkt. 108 at 35 ("In their motion to dismiss, the Parrish Defendants devote one sentence to the public disclosure bar argument, and that sentence incorporates Halifax's argument." (citing Dkt. 87 at 9)).) Accordingly, the court does not consider the Parrish Defendant's public disclosure bar argument, raised improperly for the first time in their objection to the magistrate judge's report and recommendation. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[T]o require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." (quotation

omitted)).

## C. Counts Ten Through Thirteen—Violations of the Stark Act

In counts ten through thirteen, Plaintiff alleges that Parrish violated the FCA and the Stark Act. (Dkt. 83 at 48–54.) The Stark Act generally "prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014) (quoting 42 U.S.C. § 1395nn(a)(1)(A)). It further "prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such referred patients." *Id.* (citing 42 U.S.C. § 1395nn(a)(1)(B)). Because the Stark Act does not "provide [a] private right[] of action," *Ameritox, Ltd. v. Millenium Lab'ys, Inc.*, 803 F.3d 518, 522 (11th Cir. 2015), Plaintiff pleads that Parrish's violations of the Stark Act constitute separate violations of the FCA, (*see* Dkt. 83 at 48–54). *See Bingham v. BayCare Health Sys.*, No. 8:14-cv-73-T-23JSS, 2016 WL 8739056, at *2 (M.D. Fla. Dec. 16, 2016) ("A violation of . . . the Stark [Act] . . . can form the basis of liability under the [FCA]."). When they are brought as FCA claims, Stark Act claims are also subject to Rule 9(b)'s heightened pleading standard. *United States ex rel. Childress v. Ocala Heart Inst., Inc.*, No. 5:13-cv-470-Oc-22PRL, 2015 WL 13793109, at *4 (M.D. Fla. July 2, 2015).

Because Defendants' liability hinges on a violation of the FCA rather than on a violation of the Stark Act, sufficient allegations regarding a false claim are necessary for Plaintiff to properly state a claim under the Stark Act. *See Mastej*, 591 F. App'x at

706 ("Merely alleging a violation of the Stark [Act] . . . does not sufficiently state a claim under the FCA.  It is the submission and payment of a false Medicare claim and false certification of compliance with the law that creates FCA liability." (emphasis omitted)).  Accordingly, to properly allege an FCA claim under the Stark Act, a plaintiff must "establish 'some indicia of reliability to support the allegation of an actual false claim for payment being made to the government.'"  *Id.* at 707 (cleaned up) (quoting *United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  This requirement may be satisfied where a plaintiff provides "detailed information about a representative claim" or "show[s] that [the plaintiff] personally was in a position to know that actual false claims were submitted to the government and had a factual basis for his alleged personal knowledge." *Id.*  The magistrate judge has determined that "Plaintiff fails in both respects." (Dkt. 108 at 28.)

The magistrate judge exhaustively reviewed Plaintiff's allegations and determined that they are insufficient because they do "not provide 'detailed information about a representative claim.'" (*Id.* at 29 (quoting *Mastej*, 591 F. App'x at 707).) Plaintiff provides "no examples of patient referrals, no reliable estimates of how many patients might have been referred under this scheme, and no examples of claims submitted on behalf of patients impermissibly referred." (*Id.*; *see* Dkt. 83.)  Instead, Plaintiff alleges that PMG, one of Parrish's subsidiaries, "issued a referral directive" and that "a PMG contract provision required physicians to 'exclusively utilize Hospital, its subsidiaries and affiliates, including but not limited to Parrish Health Network for the provision of the services.'" (Dkt. 108 at 29–30 (citing Dkt. 83 at 25

- 22 -

and quoting Dkt. 83 at 27).) The magistrate judge disregarded all allegations regarding PMG because Plaintiff neither asserted claims against PMG nor argued that Parrish and PMG constitute a single entity. (*See id.* at 28–29.) Plaintiff does not object to the magistrate judge's recommendation in this regard. (*See* Dkt. 114.) Accordingly, the court disregards the allegations regarding PMG.

In addition to his allegations regarding PMG's actions, Plaintiff alleges that one of Parrish's physicians, Dr. Ben Nettleton, resigned due to pressure to refer within the "Parrish network." (Dkt. 83 at 26–27.) Plaintiff also alleges that Parrish "regularly tracked referrals" and the revenue they generated and that one of Parrish's doctors, Dr. E. Wayne Mosley, received $522,168 in compensation despite costing Parrish $591,472. (*Id.* at 27–28.) The magistrate judge has determined that these allegations are insufficient to support a Stark Act claim. (Dkt. 108 at 29–32.) No allegations connect Dr. Nettleton's resignation to a Stark Act violation. (*See* Dkt. 83.) The second amended complaint appears to insinuate that Dr. Nettleton resigned in protest of Parrish's referral system, (*see id.* at 26–27), but as the magistrate judge notes, the referrals could have bothered Dr. Nettleton without violating the Stark Act, (Dkt. 108 at 30), and his resignation is not proof of illegality. Similarly, the magistrate judge finds insufficient support for Plaintiff's argument that Parrish's referral tracking is proof of impropriety—in fact, he reasons that such tracking "may be a normal and reasonable business practice." (*Id.* at 31–32 (quotation omitted).) Finally, the magistrate judge concludes that the allegations regarding Dr. Mosley do not plausibly support an improper financial relationship. (*Id.* at 30–31.) *See United States ex rel. Raven*

*v. Ga. Cancer Specialists*, No. 1:11-CV-994-CAP, 2016 WL 11745590, at *9 (N.D. Ga. Apr. 1, 2016) (outlining allegations that permitted the plausible inference of an improper financial relationship). Though Plaintiff claims that Dr. Mosley produced a "substantial loss nearly equal to his salary" for Parrish, (Dkt. 83 at 28), the magistrate judge reasons that this loss can just as plausibly be "due to his below average productivity"—which Plaintiff alleges "was in the [tenth] percentile," (*id.*)—as it can be the result of an impermissible financial relationship, (Dkt. 108 at 31.) Further, even if Plaintiff had adequately alleged a referral scheme in violation the Stark Act—which the magistrate judge does not find, (*see id.* at 29–32)—merely "describing a scheme is insufficient to plead an FCA violation." (*Id.* at 32.) *See Clausen*, 290 F.3d at 1311 ("Without the *presentment* of [a false] claim, while the practices of an entity that provides services to the [g]overnment may be unwise or improper, there is simply no actionable damage to the public fisc as required under the [FCA].").

Absent details of a representative claim, Plaintiff's Stark Act claims could only survive dismissal if he "provide[d] the required indicia of reliability by showing that he personally was in a position to know that actual false claims were submitted to the government and had a factual basis for his alleged personal knowledge." *Mastej*, 591 F. App'x at 707. Plaintiff's statements that he is the principal of OMNI and served as a medical director at Parrish with medical staff privileges, (Dkt. 83 at 4), are insufficient because it is the actual information obtained, rather than the position the plaintiff held, that is relevant to this inquiry. *See Clausen*, 290 F.3d at 1314 (noting that insiders may "have an easier time" bringing FCA claims not by virtue of their status,

but because they have increased access to "information about billing practices"); *compare Mastej*, 591 F. App'x at 708 (determining that the plaintiff had sufficiently alleged insider status where he "did not base his knowledge on rumors or mere conjecture," but rather alleged that "he had direct information about [the defendant]'s billings, revenues[,] and payor mix, and he was in the very meetings where Medicare patients and the submission of claims to Medicare were discussed"), *with United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) ("[The plaintiff] does not profess to have firsthand knowledge of the defendants' submission of false claims. He is a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement."). Because Plaintiff does not allege that his role granted him access to information regarding Parrish's billings or submission of claims to the government, his Stark Act claims are due to be dismissed. *See Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) ("Improper practices standing alone are insufficient to state a claim under either [section] 3729(a)(1) or (a)(2) absent allegations that a specific fraudulent claim was in fact submitted to the government.").

Plaintiff's objection to the magistrate judge's recommendation is unavailing. He faults the magistrate judge for finding that the foregoing factual allegations fail to state a claim, but he fails to provide additional reasoning or to adduce any authority to overcome the magistrate judge's determination. (*See* Dkt. 114 at 9–11.) Such conclusory assertions, divorced from analysis or legal support, are not entitled to de novo review. *See McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th

Cir. 2020) (affirming the district court's overruling of objections to a report and recommendation where the plaintiff "made conclusory objections[] . . . unaccompanied by legal analysis"). Even if they were, Plaintiff merely argues that his allegations are sufficient to allege a violation of the Stark Act— he does not establish that his allegations sufficiently plead a violation of the FCA. (*See* Dkt. 114 at 9–11.) *See Mastej*, 591 F. App'x at 706.

The Parrish Defendants also object, arguing that dismissal of these claims should be with prejudice. (Dkt. 113 at 9–11.) They assert that Plaintiff should not "be given yet a fourth opportunity to add to his threadbare, conclusory allegations." (*Id.* at 10 (emphasis omitted).) While the court has dismissed these claims once before, it did so on shotgun pleading grounds and did not reach the merits of the claims. (*See* Dkt. 80 at 11–18.) Given that Plaintiff cured the pleading defects the court previously identified with these counts, the court agrees with the magistrate judge, (Dkt. 108 at 33–34), that Plaintiff should be given an opportunity to amend his Stark Act claims. *See Corsello*, 428 F.3d at 1014 (noting that while courts "need not" permit amendment where the plaintiff has failed to cure deficiencies by amendments previously allowed, amendment should generally be "give[n] . . . freely 'when justice so requires'" (quoting Fed. R. Civ. P. 15(a))).

The Parrish Defendants argue in the alternative that leave to amend should be denied because amendment would be futile "given [Plaintiff's] inability to identify a Stark [Act] violation with any particularity." (Dkt. 113 at 10–11.) However, dismissal with prejudice for futility is only appropriate where a more carefully drafted complaint

could not state a claim. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). That Plaintiff's previous complaints have failed to state a claim does not foreclose the possibility that an amended complaint could state a claim. The Parrish Defendants' argument to the contrary, that a qui tam plaintiff cannot supplement their pleadings with information gleaned during discovery, (Dkt. 113 at 11), rests only on an unpublished Eleventh Circuit decision, *Bingham v. HCA, Inc.*, 783 F. App'x 868, 870 (11th Cir. 2019), that was recently overruled, *see United States ex rel. Sedona Partners LLC v. Able Moving & Storage Inc.*, No. 22-13340, 2025 WL 2087871, at *8 (11th Cir. July 25, 2025) ("[A] district court has the discretion to dismiss a relator's complaint before or once discovery has begun, but it may not disregard a relator's allegations solely because those allegations were obtained in discovery."). Because the Parrish Defendants fail to show that amendment would be futile, their objection is overruled.[6]

In summary, counts three through thirteen are dismissed without prejudice. As no party has objected to the magistrate judge's recommendation that counts one, two, and fourteen be dismissed with prejudice, the court adopts that portion of the

---

[6] The Parrish Defendants' parallel objection—that all claims against Mikitarian, McAlpine, and Jackson "should be dismissed with prejudice because, given three prior opportunities, [Plaintiff] has failed to allege with particularity any instances where any of [those Defendants] personally submitted a false claim or caused a false claim to be submitted to the government, as required by the [FCA]," (Dkt. 113 at 5)—is overruled for the same reason. Plaintiff's failure to include sufficient allegations to state a claim as to these Defendants in his prior pleadings does not mean that he cannot include sufficient allegations to state a claim against them in a future pleading, and thus, the Parrish Defendants have failed to demonstrate that Plaintiff's claims against these Defendants are futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

recommendation in full.

### D. Appointments Clause

In their motions to dismiss, Defendants include brief arguments that Plaintiff's appointment as a relator is unconstitutional.  (*See* Dkt. 86 at 26; Dkt. 87 at 9–10.)  *See United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1322 (M.D. Fla. 2024) (reasoning that the appointment of relators under the FCA's qui tam provision violates the Appointments Clause to the United States Constitution).  Defendants cite no binding authority to support their arguments, however.  (*See* Dkt. 86 at 26; Dkt. 87 at 9–10.)  As the magistrate judge observes, "the current consensus among federal courts is that *qui tam* lawsuits are constitutional."  (Dkt. 108 at 8 (quoting *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019) ("A relator is neither appointed as an officer of the United States nor employed by the United States." (internal citation omitted))).)  *See United States ex rel. Butler v. Shikara*, 748 F. Supp. 3d 1277, 1294–97 (S.D. Fla. 2024) (determining that the FCA's qui tam provision does not violate the Appointments Clause).  Defendants object to this determination by merely reiterating the arguments presented to the magistrate judge, which the court agrees are unavailing, and thus, their objections are overruled.  (*See* Dkt. 112 at 11; Dkt. 113 at 2–3 & n.1.)

### E. Motion to Stay

While the magistrate judge was considering Defendants' motions to dismiss, Plaintiff moved to stay discovery pending resolution of the motions or, in the

alternative, sought a twelve-month extension of the discovery deadline. (Dkt. 104.) After recommending that all of Plaintiff's claims be dismissed, either with or without prejudice, (Dkt. 108), the magistrate judge denied the motion to stay, determining that a stay was not warranted given that the motions to dismiss were not dispositive of all Plaintiff's claims, (Dkt. 111 at 1–3). The magistrate judge also determined that Plaintiff's request to extend the discovery deadline—which was, in effect, a motion to amend the court's case management and scheduling order—"fail[ed] to cite, let alone satisfy," the relevant standard. (*Id.* at 3–4.) Plaintiff seeks review of that order. (Dkt. 115.) Because this order resolves the pending motions to dismiss, the court determines that Plaintiff's request to stay discovery pending resolution of those motions is moot. The court also agrees with the magistrate judge that Plaintiff's request to extend the discovery deadline was due to be denied and thus affirms the magistrate judge's order.

Plaintiff argues that "during part of the discovery period, there was no operative complaint pursuant to which to issue discovery requests" because the court dismissed the amended complaint without prejudice on September 19, 2024. (Dkt. 115 at 7.) This argument essentially restates the position he took in his motion before the magistrate judge, where he asserted that the current discovery deadline was adopted "before the initial motions to dismiss were filed and the first amended complaint was dismissed," at which time "the [c]ourt would not have anticipated that the amended complaint would be dismissed and a second amended complaint followed by a motion to dismiss would later be filed." (Dkt. 104 at 6.) This argument is unavailing because complaints are routinely dismissed and district courts generally expect that the parties

will nevertheless diligently prepare to litigate the claims they have elected to bring.  It is for that reason that the filing of a dispositive motion does not, without more, warrant a stay of discovery.  *See Hansen v. Smith*, No. 6:25-cv-117-ACC-LHP, 2025 WL 1677717, at *1 (M.D. Fla. June 13, 2025) ("Normally, the pendency of a motion to dismiss will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion.  Such motions for stay are rarely granted." (alteration adopted) (quoting Middle District Discovery (2021) § I.E.4)).  Indeed, the court's scheduling order expressly advises the parties that "the pendency of a dispositive motion, such as a motion to dismiss . . . , does not stay the deadline for completion of discovery," and that "[p]arties who elect to forego discovery on the merits of any claim or defense due to the pendency of a dispositive motion or for any other reason, without leave of [the c]ourt, will not be entitled to an extension of the deadlines set forth in this order." (Dkt. 53 at 2.)

Plaintiff also raises new arguments in his objection in an attempt to satisfy Rule 16's good cause standard.  (*See* Dkt. 115 at 7–8.)  Because these arguments are not properly before the court, they need not be considered.  *See Williams*, 557 F.3d at 1292.  Nevertheless, the court now explains why these additional arguments are also unavailing.  Plaintiff contends that good cause exists to modify the scheduling order because he held a "good faith belief" that the scheduling order was rendered inoperative when the court dismissed Plaintiff's amended complaint without prejudice.  (*See* Dkt. 115 at 8.)  This argument is without support as to the predicate for such a "good faith belief," (*see id.*), and is directly contravened by the scheduling

order, which provides expressly to the contrary: "All parties must thoroughly review the contents of this order, *which shall govern all proceedings in this action, unless subsequently modified by written order for good cause shown*." (Dkt. 53 at 1 (emphasis added).)  Indeed, this warning was placed at the top of the first page of the scheduling order under the heading "**PLEASE TAKE NOTE**." (*Id.*)  The scheduling order thus provided—and continues to provide—clear notice that dismissal of the operative complaint would not displace the scheduling order.  (*See id.* at 7 ("The [discovery] deadline will not be extended absent a showing of good cause.  Failure to complete discovery within the time established by this [o]rder shall not constitute good cause for continuance." (citation omitted)).)

Plaintiff's assertion that the court "has effectively foreclosed any discovery in the case" is without merit.  (Dkt. 115 at 5.)  The court's scheduling order, entered on January 4, 2024, gave the parties until March 31, 2025, to conduct discovery—more than a year during which Plaintiff could have sought information essential to his claims.  (Dkt. 53 at 2.)  Instead, Plaintiff concedes that he has not "issued *any discovery to date*." (Dkt. 104 at 3 (emphasis added).)  Plaintiff has not demonstrated due diligence, ending the Rule 16 inquiry.  *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002) ("A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry . . . ." (citing *Sosa*, 133 F.3d at 1418)).  Plaintiff's claims of prejudice do not alter this conclusion.  (*See* Dkt. 115 at 6.) *See Rogers v. Hartford Life & Accident Ins. Co.*, No. 12-0019-WS-B, 2012 WL 2395194, at

*3 (S.D. Ala. June 22, 2012) ("[D]iligence, not lack of prejudice, is the key to the Rule 16(b)(4) inquiry.").

## CONCLUSION

Accordingly:

1. The magistrate judge's report and recommendation (Dkt. 108) is **ADOPTED in part**.

2. Defendants' motions to dismiss (Dkts. 86, 87) are **GRANTED in part** and **DENIED in part**.  Counts one, two, and fourteen of the second amended complaint are **DISMISSED with prejudice**.  Counts three through thirteen are **DISMISSED without prejudice**.  The motions to dismiss are otherwise **DENIED**.

3. The court gives Plaintiff one last opportunity to amend.  On or before September 2, 2025, Plaintiff may file a third amended complaint.  The court anticipates entering a new case management and scheduling order if Plaintiff amends.  Accordingly, if Plaintiff files a third amended complaint, the parties shall file a new case management report on or before September 19, 2025.

4. The magistrate judge's order denying Plaintiff's motion to stay (Dkt. 111) is **AFFIRMED**.

**ORDERED** in Orlando, Florida, on August 5, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record