UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRAIG DELIGDISH,

Plaintiff,

v. Case No: 6:22-cv-696-JSS-DCI

NORTH BREVARD COUNTY HOSPITAL DISTRICT and HALIFAX HOSPITAL MEDICAL CENTER TAXING DISTRICT,

Defendants.
___________________________________/

**ORDER**

Plaintiff, Dr. Craig Deligdish, and Defendants—North Brevard County Hospital District d/b/a Parrish Medical Center (Parrish), and Halifax Hospital Medical Center Taxing District d/b/a Halifax Health (Halifax)—all move for summary judgment. (Dkts. 140, 141, 142, 156, 157, 158.) The motions are opposed. (Dkts. 151, 152, 153, 154.) Upon consideration, for the reasons below, Defendants' motions are granted and Deligdish's motion is denied.

## BACKGROUND[1]

### A. Statutory Background

Four key statues and programs govern this case: the False Claims Act (FCA),

[1] In deriving the facts from the record, the court "draw[s] all inferences and view[s] all evidence in the light most favorable to" the nonmoving parties. *See Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015).

the Low-Income Pool (LIP) Program, the Coronavirus Aid, Relief, and Economic Security (CARES) Act, and the Stark Act. The court briefly summarizes each in turn.

The FCA "is the primary law on which the federal government relies to recover losses caused by fraud." *Bingham v. HCA, Inc.*, 783 F. App'x 868, 870 (11th Cir. 2019). "The FCA permits a private individual, known as a relator, to bring a qui tam action on the relator's behalf and the government's behalf for any FCA violation." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 696–97 (11th Cir. 2014) (emphasis omitted). The LIP program "is a primary funding source for Medicaid participating hospitals and a variety of non-hospital provider entities." (Dkt. 138-3 at 6.) *See* Fla. Att'y Gen. Op. 2009-06 (2009), at *1 ("In 2006, the State of Florida established the [LIP] program as one of the components of a broad-ranging reform of the Florida Medicaid Program. The program is a joint federal-state program requiring funding from both federal and . . . non-federal sources."). The CARES Act aims to provide federal relief for persons negatively affected by the Covid-19 pandemic and prohibits physician groups from receiving government funding for services already covered by other Covid-19 relief programs. *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Finally, the Stark Act makes it illegal for hospitals to compensate referring physicians based on the value and volume of referrals for designated health services. *See* Stark Act, 42 U.S.C. § 1395nn.

**B. Factual Background**

Deligdish is the President, Chief Executive Officer, and sole shareholder of Omni Healthcare, Inc. (Omni), a multi-specialty physician group based in Brevard

County, Florida. (Dkt. 138 at 2.) Parrish, a political subdivision of the state of Florida, is a public, 210-bed acute-care hospital operating in North Brevard County, Florida. (*Id.* at 2.) Halifax Health (Halifax) is a special tax district hospital under Florida law and serves as a public safety-net hospital. (*Id.*) North Brevard Medical Support, Inc. (NBMS) d/b/a Parrish Medical Group (PMG) is a Florida healthcare corporation and a subsidiary of Parrish. (*Id.*)

From February 28, 2018, through June 2, 2021, Omni managed PMG, Parrish's physician practice, through a management services agreement. (*Id.*) Pursuant to that agreement, with "respect to [p]hysician employment agreements in existence on the [e]ffective [d]ate, [the b]usiness [m]anager shall review the terms and conditions of such agreements and, following the review, will recommend to [c]lient additions, deletions and changes to the terms contained in such [p]hysician employment agreements prior to the renewal or extension of such employment agreements." (*Id.*) PMG also agreed to "not unreasonably withhold approval to such recommendations, and any agreed upon recommendations w[ould] be carried out by [the b]usiness [m]anager." (*Id.*) The agreement further provided that PMG did "not, by entering into this [a]greement, delegate to Omni . . . the powers, duties, authority and ultimate responsibilities vested in" PMG, which would remain "fully liable and legally accountable at all times to all patients, governmental agencies and others for patient care and for all other clinical aspects and operations and maintenance of [the p]ractice, except as otherwise outlined in th[e] [a]greement." (*Id.* at 2–3 (alteration adopted).) The agreement also required that "no contract or arrangement regarding the provision

of [m]edical [s]ervices or the payment therefor shall be entered without the consent of PMG." (*Id.* at 3 (alteration adopted).)

On November 6, 2020, Omni's Chief Financial Officer, Mark Bobango, issued a memorandum confirming the following as to PMG:

> Our compensation administration policies and procedure are structured to ensure that positions are neither underpaid nor overpaid. And as recently communicated to you, a thorough salary review was conducted and confirmed that PMG care partners are being paid at a market level which is comparable to other practices and acceptable for the community we serve.

(*Id.*) On June 2, 2021, PMG terminated the agreement. (*Id.*)

In another memorandum—dated October 31, 2017—Parrish summarized an interlocal opportunity with Halifax as follows:

> The primary purpose of the interlocal agreement is to obtain $200,000 in increased Medicaid funding under the Low Income Pool (LIP) program. The benefit to Halifax is to relieve it of excess LIP funds it would owe by designating LIP payments to other public hospitals. The [a]rrangement will be submitted to the Florida Agency for Health Care Administration (AHCA) to transfer LIP funds in their records. Under the interlocal agreement, Parrish will receive a wire transfer from Halifax in the amount of $4,434,000. Parrish will then transfer $4,234,000 to an account identified by Halifax. Parrish will retain the difference of $200,000 for providing care to Medicaid, underinsured and uninsured individuals.

(*Id.* at 3–4 (alterations adopted).)

On November 13, 2017, the interlocal agreement between Halifax and Parrish was filed with the Brevard County Clerk of Courts. (*Id.* at 4.) On December 26, 2019, a second interlocal agreement between Halifax and Parrish was filed with the Brevard County Clerk of Courts. (*Id.*) On or around June

2021, Deligdish disclosed materials to Florida's Agency for Health Care Administration's Office of Inspector General (AHCA-OIG) pertaining to these interlocal agreements, which resulted in AHCA-OIG opening an investigation "to determine if any actions were taken by AHCA employees that would result in violations of federal or state laws, rules, or regulations and Agency policies." (*Id.*) At the conclusion of the investigation, AHCA-OIG found that any "allegation that unknown . . . Medicaid employees redistributed LIP funding between hospital taxing districts in violation of Centers for Medicare and Medicaid Services [(CMS)] guidelines is [u]nsubstantiated." (*Id.* at 5 (emphasis omitted).) AHCA-OIG's report stated that "the documentation provided by the Bureau of Medicaid Program Finance ([MPF]) for LIP payments made to Halifax and PM[G] . . . indicated they both were within their cost allocation limits and neither received an overpayment of LIP funding." (*Id.* (alteration adopted).) AHCA-OIG's report also noted that "[n]o additional documentation was provided . . . indicating any change in LIP payments or adjustments to either entity . . . that would indicate that either entity received more LIP funding than allowed." (*Id.*)

After issuing its report, the AHCA-OIG received comments from Deligdish about the case. (*Id.*) In a memorandum issued on January 16, 2024, the AHCA-OIG concluded that "[a]fter reviewing [Deligdish's] comments and based on the available information, [the AHCA-OIG] maintain[s] that [the] findings and recommendations are correct" and that Deligdish "did not provide

information or documentation that affects the findings of the report." (*Id.*) The memorandum further stated that "hospitals, upon receipt of LIP funding reimbursement for charity care, are not restricted in the use of that reimbursement." (*Id.* at 6.) It concluded that "according to Agency records, neither Halifax Hospital Medical Center nor Parrish Medical Center ha[d] a LIP overpayment (disallowance) for" the relevant timeframes. (*Id.*)

**C. Procedural Background**

On February 1, 2022, Deligdish initiated this case in the Northern District of Florida as relator of the United States and Florida. (*See* Dkt. 1 at 1.) On April 15, 2022, this case was transferred to this district based on the parties' stipulation. (*See* Dkts. 5, 6.) *See* 28 U.S.C. § 1404(a). On August 10, 2022, Deligdish filed an amended qui tam complaint that was largely identical to the original with minor alterations and additions. (*Compare* Dkt. 1, *with* Dkt. 11.) On September 6, 2023, the United States and Florida notified the court of their decision not to intervene in this case. (*See* Dkt. 26.) They requested that the court "solicit [their] written consent" before ruling on any motion to dismiss, (*id.* at 2), and the court granted the request, (Dkt. 27 at 2). Halifax and Parrish each moved to dismiss the amended complaint. (*See* Dkts. 56, 57.) The court granted those motions in part and denied them in part. (*See* Dkt. 80.) Deligdish timely filed a second amended complaint, (Dkt. 83), which Defendants Halifax and Parrish again moved to dismiss, (Dkts. 86, 87). The court granted those motions in part and denied them in part. (*See* Dkts. 108, 120.) In the operative third

amended complaint, Deligdish brings twelve counts. (Dkt. 121 at 37–55.) Counts I through IV are brought against both Defendants Halifax and Parrish for violations of the False Claims Act (FCA), 31 U.S.C. § 3729(A)(1)(G), conspiring to violate the FCA, 31 U.S.C. § 3729(A)(1)(C), violation of the Florida False Claims Act (FFCA), Fla. Stat. § 68.082(2)(g), and conspiring to violate the FFCA—all based on their alleged duty to return excess LIP payments. (Dkt. 121 at 37–43.) Counts V through VII are brought against Parrish for violations of the FCA under 31 U.S.C. § 3729(A)(1)(A), § 3729(A)(1)(B), and § 3729(A)(1)(G), and for conspiring to violate the FCA under 31 U.S.C. § 3729(A)(1)(C) based on alleged false certifications pertaining to the CARES Act. (Dkt. 121 at 43–48.) Finally, counts VIII through XII are brought against Parrish for violation of the FCA, 31 U.S.C. §§ 3729(A)(1)(A)—(C) and 3729(A)(1)(G), as well as the Stark Act, 42 U.S.C. § 1395nn. (Dkt. 121 at 48–55.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This

rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes precluding judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." (quotation omitted)). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the

responsibility of the non-moving party, not the court." (alteration adopted and quoting *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

Halifax and Parrish move for summary judgment. (Dkts. 140, 142.) Deligdish moves for summary judgment as to Counts I–VIII. (Dkt. 141.)[2] The court begins by addressing the abandoned claims before turning to the FCA, Stark Act, and FFCA claims.[3]

### A. Abandoned Claims

The district court need not "distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar*

[2] As such, the parties agree that there is no genuine dispute of material fact as to except as to the Stark Act claims. (*See* Dkt. 141; *see also id.* at 2 (asserting that disputes as to material facts remain as to the Stark Act claims).)

[3] The court notes that Halifax and Parrish once again argue that Deligdish's appointment as a relator is unconstitutional. (*See* Dkt. 140 at 24–25; Dkt. 142 at 2.) Because the court need not reach this issue to resolve summary judgment, the court declines to address it.

*Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc). "Instead, it is up to the parties to formulate their arguments—grounds not relied on at summary judgment are abandoned." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1182 (11th Cir. 2024) (concluding that the plaintiffs had forfeited any claims where they only mentioned those arguments in "perfunctory reference[s]"). Here, both Halifax and Parrish make several arguments to which Deligdish fails to respond and the court accordingly treats them as abandoned.

First, Parrish argues that Deligdish fails to prove a CARES Act violation, and thus Parrish is entitled to summary judgment for all the CARES Act counts. (Dkt. 142 at 23–25; Dkt. 156 at 5–7.) Although Deligdish technically responds and alleges certain facts, he fails to cite any record evidence in support, instead broadly referencing his statement of facts section. (*See* Dkt. 153 at 14–15.) *See McCreight v. AuburnBank*, 117 F.4th 1322, 1332 (11th Cir. 2024) ("[The p]laintiff[ cannot] simply allege facts and let the district court figure things out from there."). Accordingly, the court concludes that Deligdish abandons this argument. *See LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1353 (11th Cir. 2020) (explaining that facts and arguments that are buried in the background section of a party's brief and only tangentially referred to thereafter are "almost certainly abandoned"). And because an "essential element" of a claim under the FCA "is the actual presentment or payment of a false claim," this means that Parrish is entitled to summary judgment as to all the CARES Act claims. *See United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1360 (11th Cir. 2023); *id.*

("Standing alone, a fraudulent scheme, no matter how egregious, is not enough; there must be an actual false claim.").[4]

Second, Parrish and Halifax argue that they are entitled to summary judgment as to the conspiracy claims. (Dkt. 140 at 23–24; Dkt. 142 at 10–13.) In response to Parrish, Deligdish only conclusory asserts that "Halifax and Parrish conspired to illegally keep the money by performing a series of transfers by which Halifax retained the majority of the money and Parrish received a kickback." (Dkt. 153 at 13.) *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned." (quotation omitted)); *Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*, 672 F. Supp. 3d 1286, 1295–96 (S.D. Fla. 2023) (granting summary judgment on certain claims in favor of the defendant because the plaintiff abandoned them); *Powell v. Am. Remediation & Env't, Inc.*, 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." (quotation omitted)), *aff'd,* 618 F. App'x 974 (11th Cir. 2015). In response to Halifax's motion for summary judgment, Deligdish includes more argument, but still fails to cite any legal authority. (*See* Dkt. 154 at 15–16.) *See Moore v. Cecil*, 109 F.4th 1352, 1366 (11th

[4] Even so, the court expands on why Parrish is entitled to summary judgment on the CARES Act claims below.

Cir. 2024) (concluding that an argument was abandoned whether the party offered only "conclusory assertion[s]" "without citation to any legal authority"); *United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014) (declining to review claims the court deemed abandoned where the party made "some reference" to the issue but did "not cite to any legal authority").

Accordingly, the court treats Deligdish's conspiracy claims as abandoned.[5] *See Flanigan's Enters., Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir.2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Riggin v. United States Dep't of Air Force*, 243 F. Supp. 3d 1324, 1333 (M.D. Ga. 2017) (granting summary judgment and finding the plaintiff had abandoned a claim where the plaintiff "cite[d] no legal authority" in response to the motion for summary judgment); *Haney v. Eaton Elec., Inc.*, 528 F. Supp.

[5] Even if Deligdish did not abandon these claims, Parrish is entitled to summary judgment as to the conspiracy claims for the same reasons Parrish is entitled to summary judgment as to the FCA and Stark Act claims as further explained below. (*See* Dkt. 142 at 10–13.) *See Sun v. Girardot*, 237 F. App'x 415, 417 (11th Cir. 2007) (affirming a grant of summary judgment on a conspiracy claim because "conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment"); *United States ex rel. Marsteller v. Tilton*, 556 F. Supp. 3d 1291, 1317 (N.D. Ala. 2021) (explaining that "secondary liability for conspiracy to violate the FCA cannot exist without a viable underlying claim" and collecting cases (alteration adopted and quotation omitted)); *Hunt for use & benefit of United States v. Cochise Consultancy, Inc.*, No. 5:13-CV-2168-LCB, 2025 WL 863466, at *11–12 (N.D. Ala. Mar. 19, 2025) (granting summary judgment on conspiracy claim where the plaintiff provided no evidence of a conspiracy or of an underlying FCA violation); *United States ex rel. Wilkerson v. RCHP-Florence, LLC*, No. 2:21-CV-00569-ACA, 2023 WL 2730259, at *12 (N.D. Ala. Mar. 30, 2023) (noting that "at least one circuit court of appeals and some district courts within the Eleventh Circuit and others have" required "dismissal of a False Claims Act conspiracy claim in the absence of a viable underlying claim" and doing the same); *United States v. LifePath Hospice, Inc.*, No. 8:10-CV-1061-T-30TGW, 2016 WL 5239863, at *9 (M.D. Fla. Sept. 22, 2016) ("[D]istrict courts in the Eleventh Circuit—and at least one other circuit court—have held that a failure to adequately allege the existence of a false claim is fatal to a conspiracy claim."), *aff'd sub nom. United States v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018).

2d 1262, 1270 (N.D. Ala. 2007) (deeming abandoned arguments "without citation to any legal authority" and noting that "bare assertions . . . [are] insufficient to survive summary judgment").

**A. The FCA**

The FCA "creates a cause of action in favor of the United States." *Nuflo*, 79 F.4th at 1359 (quotation omitted). "As an enforcement mechanism, the FCA includes a qui tam provision under which private individuals, known as relators, can sue in the name of the [United States g]overnment to recover money obtained in violation of § 3729." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1343 (11th Cir. 2021) (quotation omitted). "To be liable under the [FCA], a plaintiff must, at a minimum, allege that the defendant acted in a way to defraud the government," which "could include knowingly causing a false claim to be submitted to the government, [31 U.S.C.] § 3729(a)(1)(A); knowingly submitting a false statement that is material to a false claim to the government, *id.* § 3729(a)(1)(B); knowingly concealing or avoiding an obligation to pay the government, *id.* § 3729(a)(1)(G); and conspiring to do any of these acts of fraud, *id.* § 3729(a)(1)(C)." *Stillwell v. State Farm Fire & Cas. Co.*, No. 21-13740, 2026 WL 1480364, at *6 (11th Cir. May 27, 2026). "To prevail on [an] FCA claim, [Deligdish] must prove: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Mortg. Inv'rs Corp.*, 987 F.3d at 1346 (quotation omitted). But a case must be dismissed where the claim is based on "substantially the same" allegations or transactions that were previously publicly disclosed unless the

plaintiff was "an original source of the information," as defined in the statute. 31 U.S.C. § 3730(e)(4)(A)–(B); *see also* Fla. Stat. § 68.087(3) (same).

Here, Halifax and Parrish contend they are entitled to summary judgment as the LIP and CARES Act claims are barred due to public disclosure and Deligdish fails to establish the scienter and materiality elements. (*See* Dkt. 140 at 16–24; Dkt. 142 at 9–14.) The court agrees. The court first address the public disclosure bar before turning to scienter and materiality in turn.

**1. The Public Disclosure Bar**

The FCA "prohibits lawsuits where the allegations in the complaint are 'substantially the same' as . . . allegations or transactions contained in public disclosures, unless the plaintiff is an original source." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015) (quoting 31 U.S.C. § 3730(e)(4)). The FCA's public disclosure bar applies if "the allegations made by the plaintiff [have] been publicly disclosed" and "the disclosed information [is] the basis of the plaintiff's suit," unless "the plaintiff is an original source of that information." *Id.* (quotations omitted).[6] An original source includes any individual who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the [g]overnment before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

---

[6] The FFCA has a similar bar, and indeed, the two bars are analyzed in the same way. *See Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 719 n.1 (11th Cir. 2012) ("The district court found the FFCA tracked the [FCA] and applied the same analysis for both. [The r]elators do not dispute this conclusion, and thus, [the court's] analysis applies equally to the [FFCA] and [FCA] claims.").

Halifax and Parrish argue that they are entitled to summary judgment because Deligdish's claims are precluded under the FCA's public disclosure bar. (Dkt. 140 at 8–16; Dkt. 142 at 25–26.) Deligdish disagrees and contends that he is an original source. (Dkt. 153 at 18–19; Dkt. 154 at 6–9.) The court begins by addressing the LIP program before turning to the CARES Act.

Deligdish primarily points to this court's previous orders and asserts that "if the [c]ourt finds an argument unpersuasive pursuant to a motion to dismiss and a party makes the same argument with no additional evidence at summary judgment, the argument should again be rejected." (Dkt. 154 at 6–7.) In that order, the court looked at conversations Deligdish had with the government on June 17, 2021, and evaluated whether the information Deligdish shared had been already publicly disclosed. (*See* Dkt. 108 at 13–17; *see also* Dkt. 91-2 at 2–3.) The court concluded that the public disclosure bar did not apply to the LIP program claims and that Deligdish was an original source. (Dkt. 108 at 37–39.)[7] Specifically, the court highlighted that Deligdish's allegation that Halifax and Parrish "conspired to launder government money and use these monies to fund projects for which the monies were not intended" and that Halifax and Parrish "knowingly misused and conspired to launder LIP funds" had not been disclosed. (Dkt. 108 at 37–39 (quotation omitted); Dkt. 120 at 13–17 ("[W]hile [Deligdish's] disclosure is light on facts, it nevertheless materially adds to the interlocal agreements because it claims that those agreements were knowingly

[7] The court did not previously address "the public disclosure bar arguments [Deligdish] made in support of the CARES Act counts." (Dkt. 108 at 35.)

being used as a mechanism to misappropriate money and defraud the government.").)

Since the court issued its order on the motion to dismiss, the Eleventh Circuit published *United States ex rel. Smith v. Odom*, 148 F.4th 1322 (11th Cir. 2025). There, the court affirmed a district court's order that "determined that the False Claims Act's public disclosure provision barred [the plaintiff's] suit because the allegations in the complaint were publicly disclosed." *Id.* at 1328. In that case, the court concluded that alleged fraud was publicly disclosed where the disclosure described the "grant assurances related to federal funding," noted that the "federal money [came] with strings attached," and explained that the action at issue "violated two of these assurances." *Id.* at 1329 (quotation omitted). The court noted that it was sufficient that the articles included these "limited facts," and that they did not need to "contain any allegations" to "allow the conclusion that a fraud has occurred." *Id.* (quotation omitted). As to whether the allegations were substantially the same as those in the public disclosure, the court noted that the added information on "the strawman scheme," the actions of other actors, and actions taken after the disclosure at issue was not enough to avoid the conclusion that the public disclosure "outlined the same scheme" as the complaint. *Id.* at 1331. Finally, the court recognized that the plaintiff "provide[d] background information and additional details—but that's it." *Id.* The court then held that such allegations "are not material additions because they merely supplement and contextualize the core fraud hypothesis already disclosed" and that ultimately "[t]he heart of [the plaintiff's] complaint and the [public disclosures wa]s the same." *Id.*

The Eleventh Circuit's decision in *Odom* compels a similar conclusion here. *See* 148 F.4th at 1330 (explaining that it is not enough "for would-be relators" to "have one piece of a puzzle that is already largely complete"). Here, the core allegations in Deligdish's claims were publicly disclosed in 2017 and 2019 when the interlocal agreements were publicly filed with the Brevard County Clerk, in the November 2017 Board Book, and in the HHS-OIG August 2019 report about the LIP program. (*See* Dkt. 140 at 10–12; *see also* Dkt. 125 at 18–20; Dkt. 138-3 at 26–30, 32–36; *id. passim*.) Accordingly, the court concludes "the same general allegations in [Deligdish's] complaint have already been publicly disclosed." *See Odom*, 148 F.4th at 1329.

Still, for arguments sake, the court assumes Deligdish adds "that neither AHCA nor HHS approved the transaction described in the interlocal agreements" and that "Parrish was advised by their attorneys that this conduct may have been in violation of the law" which "confirm[s] that the [i]nterlocal [a]greements were not approved and that Parrish was on notice that its conduct was illegal." (Dkt. 154 at 8.) Even so, Deligdish fails to explain how "the public disclosures [were not] already sufficient to give rise to an inference of fraud," why these additions are not merely "cumulative allegations," or that these additions are not simply "background information and details that help one understand or contextualize a public disclosure." *Odom*, 148 F.4th at 1330 (alteration adopted and quotation omitted).[8]

[8] In fact, Deligdish's primary evidence to support his argument that Halifax and Parish knew they violated the FCA in entering the published LIP interlocal agreements is that the proper "procedure was publicly and plainly articulated." (Dkt. 153 at 12.)

Ultimately, the court concludes that Deligdish's allegations "are details, not material additions," so the public disclosure bar applies and Deligdish does not qualify as an original source as to the LIP program claims. *See id.* at 1331 (concluding that a plaintiff did not materially add to the public disclosures where he revealed underlying reasons for certain actions taken and a separate violation because this "merely supplement[ed] and contextualize[d] the core fraud hypothesis already disclosed" (quotation omitted)); *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1303 (11th Cir. 2024) ("The additional allegations . . . merely supplement and contextualize the core fraud hypothesis."); *United States ex rel. Scarbrough v. Alabama Cancer Care, LLC*, No. 1:22-CV-1533-CLM, 2026 WL 208627, at *9–10 (N.D. Ala. Jan. 27, 2026) (finding that a former employee of a company did not qualify as an original source where the information was publicly disclosed and was enough to give rise to an inference of fraud, and noting that the cumulative allegations did not materially add to the public disclosures).[9]

As to the CARES Act violations, Parrish argues that Deligdish is not an original source. (Dkt. 142 at 25–26.) Parrish contends that the CARES Act transactions and alleged violations were disclosed in a series of articles. (*See* Dkt. 142-3.) Again—

[9] Deligdish notes that "Parrish attempts to inappropriately incorporate Halifax's arguments in violation of the Local Rules" and asks the court to strike the attempt and consider the argument waived by Parrish. (Dkt. 153 at 18.) It is true that the Local Rules governing motion practice prohibit incorporation by reference. *See* M.D. Fla. R. 3.01(h) ("A motion, other legal memorandum, or brief may not incorporate by reference all or part of any other motion, legal memorandum, or brief."). In any event, Local Rule 1.01 authorizes the court to "temporarily modify or suspend the application of" Local Rule 3.01(h) if doing so is "reasonably necessary" to "advance efficiency, consistency, convenience, and other interests of justice." M.D. Fla. R. 1.01(a)–(b). Accordingly, in its discretion, the court excuses the instant noncompliance with Local Rule 3.01(h).

without citation— Deligdish disagrees, arguing that the articles "have nothing to do with the expenditures for which Parrish used CARES Act funds" and that Deligdish is specifically alleging that "Parrish inappropriately spent CARES Act funds for ineligible expenditures." (Dkt. 153 at 18–19.) But the operative third amended complaint does specifically allege that "lobbied the County Board for Parrish to receive an additional $5 million in funding," that "Commissioner Rita Pritchett moved to" create a "$25 million slush fund" and then "allocated her $5 million allocation to Parrish," who "after receiving the additional $5 million from the [f]und, . . . announced plans to convert the existing Parrish Health & Fitness Center into an orthopedic and sports performance center of excellence," and these allegations serve as the basis of Deligdish's CARES Act claims. (*See* Dkt. 121 at 32–34, 43–48; *see also* Dkt. 142-3 at 2–5, 8–9, 12–14 (discussing the "slush fund" being allocated to Parrish); *id.* at 32, 34–35 (discussing the plans to convert the Parrish Health & Fitness Center into an orthopedic and sports performance center of excellence).)

Ultimately, the court is neither convinced that these claims were not publicly disclosed, nor that Deligdish is an original source. *See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 936–37 (11th Cir. 2016) (concluding that a plaintiff was not an original source where it was unclear whether the plaintiff "had independent knowledge of . . . the critical component," which appeared to be "derived from secondhand sources" and "[t]o the extent [the] information [wa]s not secondhand, it appear[ed] to be . . . background information"); *Osheroff*, 776 F.3d at 814 (explaining that public disclosure "does not require each source to contain an

allegation of wrongdoing," but "requires only disclosures of allegations or transactions, suggesting that allegations of wrongdoing are not required"); *United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1297–98 (M.D. Fla. 2018) (finding that the employee-plaintiff's knowledge was not independent and did not materially add to the public disclosures where "the bulk of [the] allegations d[id] not trace the source of [the p]laintiff's knowledge" despite "claim[ing] she came by her allegations through faculty meetings" (quotation omitted)); *United States ex rel. Brown v. BankUnited Tr. 2005-1*, 235 F. Supp. 3d 1343, 1357 (S.D. Fla. 2017) ("[T]hat the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment" (alteration adopted and quotation omitted)).

At any rate, the court need not conclude that the CARES Act claims are barred as having been publicly disclosed—nor that Deligdish is not an original source—as Deligdish fails to cite any legal authority in support of his argument, so the court treats the argument as abandoned. (*See* Dkt. 153 at 18–19.) *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (treating an argument as abandoned where the party "cite[d] no authorities to support th[eir] conclusory assertions"); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue . . . is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases); *Access Now, Inc. v.*

*Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned . . . ."); *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, at *1 n.1 (11th Cir. 2019) (declining to address an argument raised "in a perfunctory manner without supporting arguments" (quotation omitted)); *Connell v. Binder*, No. 2:21-CV-629-GMB, 2025 WL 452623, at *2 (N.D. Ala. Feb. 10, 2025) (granting summary judgment because "cursory statements are insufficient to preserve [a] claim," and finding that the plaintiff had abandoned the claim). While the court could conclude its FCA analysis here, the court continues to the other elements. *See United States v. Odom*, No. 3:20CV3678-MCR-ZCB, 2023 WL 5203000, at *7 (N.D. Fla. June 22, 2023) (concluding that the plaintiff "d[id] not qualify as an original source, so the public disclosure bar applies, requiring dismissal" but still conducting the rest of the analysis), *aff'd sub nom. Odom*, 148 F.4th 1322.

**2. Scienter**

To establish scienter, Deligdish must demonstrate "either actual knowledge, deliberate ignorance, or recklessness." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023). The "scienter element refers to [the defendants'] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at 749. "Reckless disregard is the lowest scienter threshold under the FCA" and is "tantamount to gross negligence." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1303 (11th Cir. 2021). "[L]iability does not attach to innocent

mistakes or simple negligence." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015).

Deligdish argues that "Parrish acted with at least reckless disregard." (Dkt. 153 at 15.) "Congress added the reckless disregard provision to the False Claims Act . . . to ensure that knowingly captured the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted." *Urquilla-Diaz*, 780 F.3d at 1058 (quotation omitted). Still, "[l]iability attaches to only those who act in gross negligence—those who fail to make such inquiry as would be reasonable and prudent to conduct under the circumstances." *Id.* (alterations adopted and quotation omitted). It does not "punish[] honest mistakes or incorrect claims submitted through mere negligence or impos[e] a burdensome obligation on government contractors rather than a limited duty to inquire." *Id.* (quotation omitted). Accordingly, demonstrating reckless disregard requires a showing that the defendants were "conscious of a substantial and unjustifiable risk that their claims [we]re false, but submit[ted] the claims anyway." *Schutte*, 598 U.S. at 751.

Here, Deligdish argues that Halifax and Parrish knowingly violated the FCA in entering the LIP program interlocal agreements, (Dkt. 153 at 11–13), and that they knowingly violated the FCA in procuring CARES Act funds, (*id.* at 13–16). The court is "initially struck by what is not in the record" as Deligdish "identif[ies] no deposition testimony . . .relevant to the issue of scienter[, n]or did [Deligdish] submit any such testimony in response to [Halifax and Parrish's] summary judgment motion[s]."

*United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 949 (10th Cir. 2008) (footnote omitted). In fact, Deligdish "adduced virtually no evidence of [Halifax and Parrish's] conduct—or knowledge." *Id.* at 950. "[T]hese evidentiary failures [are] particularly significant in light of [Deligdish's] obligation at the summary judgment phase to produce sufficient evidence that each individual defendant . . . knowingly submitted a false claim." *Id.* (quotation omitted). In fact, the court notes that Deligdish fails to cite to almost any record evidence throughout their responses. (*See* Dkts. 153, 154.) *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a [party's] work for [them]."); *see also Sapp v. Marcum*, No. 6:21-CV-1515-PGB-DCI, 2023 WL 5984405, at *2 (M.D. Fla. Jan. 13, 2023) (granting summary judgment where the plaintiff submitted "thousands of pages of filings," and seemingly "assume[d] that it [wa]s the [c]ourt's job to comb through thousands of pages of evidence" (quotation omitted)). The court concludes that Deligdish "fail[s] to present sufficient evidence of scienter to defeat [Halifax and Parrish's] motion[s] for summary judgment." *See United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1156 (11th Cir. 2017) F.3d at 1156 (affirming grant of summary judgment where the relators' best evidence of scienter consisted of two emails).

As to the LIP program interlocal agreements, without citation to any record evidence, Deligdish states that "[t]he evidence . . . establishes that there was indeed an overpayment of funds and therefore an obligation to return the excess money to the [g]overnment." (Dkt. 153 at 11–12.) *See Johnson v. City of Fort Lauderdale*, 126 F.3d

1372, 1373 (11th Cir. 1997) (explaining that courts "are not obligated to cull the record ourselves in search of facts not included in the statements of fact"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Deligdish asserts that on October 31, 2017, Parrish summarized an interlocal opportunity with Halifax and noted that the "primary purpose of the interlocal agreement [wa]s to obtain $200,000 in increased Medicaid funding under the [LIP] program" with "[t]he benefit to Halifax" being that it would "relieve [Halifax] of excess LIP funds it would owe by designating LIP payments to other public hospitals" and noting that "[t]he [a]rrangement w[ould] be submitted to the Florida Agency for Health Care Administration (AHCA) to transfer LIP funds in their records." (Dkt. 138 at 3.) Deligdish argues that "Halifax and Parrish failed to follow the proper procedure" that "was publicly and plainly articulated" and that they "knowingly circumvented this publicly available procedure." (Dkt. 153 at 12.) But the procedure which Deligdish identifies is from February 23, 2018, nearly four months after the memorandum was issued. (*Id.* at 12–13.) Deligdish "do[es] not explain how an October [memo] would allow a reasonable jury to conclude that [Halifax and Parrish] knowingly" circumvented a procedure which did not exist at the time, and the court concludes it does not. *See United States ex rel Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1359 (S.D. Fla. 2015), *aff'd as modified sub nom. Phalp*, 857 F.3d 1148); *see also Urquilla-Diaz*, 780 F.3d at 1062 (finding that district court did not err in concluding that an "April 2005 complaint . . . would [not] allow a reasonable jury to conclude that [the defendant] executed [a] 2004 program

participation agreement with actual knowledge that its policies were unlawful").[10]

As to the CARES Act funds, Deligdish asserts that "Parrish knowingly presented false certifications of compliance with CARES Act regulations and then used the received funds for disallowed expenditures." (Dkt. 153 at 14; *see id.* at 13–16.) In support of this, Deligdish argues that "CARES Act funds could not be used for expenditures which would be reimbursed by other sources" but that "Parrish received CARES Act funds that it used for Covid-19 medications and tests, the costs for which were reimbursed by other federal programs." (*Id.*) Similarly, Deligdish argues that "CARES Act funds were only permitted to be used for [certain] costs" but that "Parrish violated these guidelines, certifying that they were necessary expenditures due to the public health emergency and were not used for expenses accounted for in the most recent budget." (*Id.*) But "the fact that there may have been a violation of the laws . . . is not enough, standing alone, to sustain a cause of action under the False Claims Act." *Phalp*, 857 F.3d at 1154 (alteration adopted and quotation omitted); *cf. Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1303 (11th Cir. 2021) (finding that there was sufficient evidence of reckless disregard where there was testimony that the defendant rejected an offer from the former owner of the

[10] The court is further unconvinced that this element is met as Parrish and Halifax "cannot have knowingly avoided an obligation to pay the grant monies back because they did not know or believe that they violated the [FCA in entering into the LIP interlocal agreements] (and still don't)." *See United States ex rel. Culpepper v. Birmingham Jefferson Cnty. Transit Auth.*, 584 F. Supp. 3d 1050, 1072 (N.D. Ala. 2022) (granting summary judgment for the defendants "because there cannot be evidence of a known obligation to pay unless" some governmental entity "orders the [defendants] to return the federal monies"). Halifax and Parrish's belief that they did not knowingly violate the FCA as to the LIP program is corroborated by the AHCA-OIG's report. (*See* Dkt. 138 at 5–6.)

practice to assist in obtaining the necessary certification because the defendant "stat[ed] that she knew the process for obtaining one" and there were emails showing that the defendant knew that it was operating without the proper certification); *United States ex rel. Fahn v. GardaWorld Fed. Servs. LLC*, No. 5:20-CV-128 (MTT), 2024 WL 1605313, at *7 (M.D. Ga. Apr. 12, 2024) (noting that the relator had presented evidence that the defendant's employees forged signatures on sign-in sheets, knowing the sign-in sheets were important for contract compliance and billing, and did not receive the required refresher training reflected in the defendant's internal records).

Deligdish asserts that "Parrish certainly knew, or could have learned through simple inquiries, that Covid-19 tests for the uninsured or those with Medicare/Medicaid would already be reimbursed." (Dkt. 153 at 15.) First, the Eleventh Circuit has rejected the argument that the plain language of regulations constitutes sufficient notice to establish the requisite scienter. *See Phalp*, 857 F.3d at 1156 ("There is nothing in the plain language . . . that would put [the d]efendants on notice that [their actions] were not compliant."). Second, Deligdish fails to demonstrate that Parrish "fail[ed] to make such inquir[ies] as would be reasonable and prudent to conduct under the circumstances." *Urquilla-Diaz*, 780 F.3d at 1058 (alterations adopted and quotation omitted). Deligdish similarly fails to demonstrate that Parrish was "conscious of a substantial and unjustifiable risk that their claims [we]re false, but submit[ted] the claims anyway." *Schutte*, 598 U.S. at 751. The court concludes that, based on what Deligdish has put forth, "[t]here is nothing . . . to suggest that [Parrish or their] employees believed or had reason to believe they were

violating [any] regulations." *Phalp*, 857 F.3d at 1156; *see Phalp*, 116 F. Supp. 3d at 1359 ("[The r]elator[] must point to facts that show that [the d]efendants knew or should have known that those practices rendered the claims they submitted false."). Third, the only thing that Deligdish cites to support the idea that Parrish knew what the CARES Act regulations permitted and disallowed is Parrish's motion for summary judgment. (*See* Dkt. 153 at 14.) "But culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). As a result, the focus is "on what the defendant[s] knew when presenting the claim." *Schutte*, 598 U.S. at 752. Accordingly, a motion for summary judgment cannot help in establishing scienter. *See id.* ("Both the text and the common law also point to what the defendant thought when submitting the false claim—not what the defendant may have thought *after* submitting it."); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) ("[A] palpably false statement, *known to be a lie when it is made*, is required for a party to be found liable under the False Claims Act." (emphasis added)); *accord United States ex rel. Marsteller v. Tilton*, 556 F. Supp. 3d 1291, 1302 (N.D. Ala. 2021); *see also United States ex rel. CLJ, LLC v. Halickman*, No. 20-CV-80645, 2024 WL 3332055, at *12 (S.D. Fla. June 14, 2024) ("[B]ecause the FCA does not proscribe fraudulent activity in general but rather prohibits the knowing submission of false claims, the requisite knowledge must be proved to exist not at just any time in the course of the parties' interactions but at the point at which a defendant submits its claims for payment." (quotation omitted)).

In sum, "to survive summary judgment . . . , [a r]elator[] must cite record evidence from which a reasonable jury could conclude that [the defendant] knowingly and falsely certified its compliance or knowingly made or used a false record." *Phalp*, 116 F. Supp. 3d at 1360 (quotation omitted). Here, Deligdish fails "to present sufficient evidence of scienter to defeat [the] motion[s] for summary judgment" and any evidence offered would not "permit a reasonable jury to conclude that [Halifax and Parrish] knowingly submitted false claims." *Phalp*, 857 F.3d at 1156 (quotation omitted). Thus, the court concludes that Deligdish fails to demonstrate that Halifax and Parrish's actions constituted anything more than "honest mistakes or . . . mere negligence." *Urquilla-Diaz*, 780 F.3d at 1058 (quotation omitted); *see also United States ex rel. Quirk v. Madonna Towers, Inc.*, 278 F.3d 765, 769 (8th Cir. 2002) (affirming grant of summary judgment where "the only evidence offered by [the relator] that [the defendant] knowingly submitted false claims to the government [wa]s the deposition testimony by facility officials that they did not seek legal advice concerning the propriety of their billing practices" and where the relator did "not submit[] any evidence suggesting that [the defendant] suspected something wrong but deliberately avoided learning more so that a fraudulent scheme could continue"); *Marsteller*, 556 F. Supp. 3d at 1315 (concluding that "the relators ha[d] not offered any evidence to show that [any] omission was made knowingly" and there was testimony to the contrary).

**3. Materiality**

The FCA defines material to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. §

3729(b)(4). "The materiality standard is demanding." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016). "[W]hile several factors can be relevant to the analysis, materiality cannot rest on a single fact or occurrence as always determinative." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1343 (11th Cir. 2021) (quotation omitted). "[F]actors that are relevant to the materiality analysis include: (1) whether the requirement is a condition of the government's payment, (2) whether the misrepresentations went to the essence of the bargain with the government, and (3) to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior." *Id.* at 1347. Additionally, if the government learns about any alleged violations, courts may look to the government's reaction to determine whether a contract provision was material to the government's payment decision. *See id.* at 1348 (explaining that "[t]he government's reaction to the defendant's violations is also a factor in the materiality inquiry" and "the logical first step in this analysis is to determine what the government actually knew"). For instance, if the government "refuse[s] to pay claims," that suggests materiality. *Id.* In contrast, if the government pays "a particular claim in full despite its actual knowledge that certain requirements were violated," that is "very strong evidence that those requirements are not material." *Id.* (quotation omitted). Finally, "if the [g]overnment regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* (quotation omitted). "Courts can properly dismiss an FCA claim on summary

judgment based on a claimant's failure to meet the rigorous standard for materiality under the FCA." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017).

Parrish argues that any alleged misrepresentations were not material under the FCA and that Deligdish "fails to produce any evidence that would establish materiality." (Dkt. 142 at 14–15 (emphasis omitted).) The court agrees. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that, at the summary judgment stage, "the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" (quotation omitted)); *Grimes v. D.C.*, 794 F.3d 83, 94 (D.C. Cir. 2015) (stating that it is the burden of the "plaintiff opposing summary judgment . . . to identify evidence that a reasonable jury could credit in support of each essential element of [the plaintiff's] claims"); *United States ex rel. Coffman v. City of Leavenworth*, 303 F. Supp. 3d 1101, 1118–19 (D. Kan. 2018) (granting summary judgment where no evidence suggested that any alleged false claims were material), *aff'd*, 770 F. App'x 417 (10th Cir. 2019); *United States ex rel. Lewis v. California Inst. of Tech.*, No. 218CV05964CASRAOX, 2021 WL 1600488, at *12 (C.D. Cal. Apr. 19, 2021) ("[I]n light of the demanding standard required for materiality under the FCA, and [the r]elator's failure to adduce any evidence that would meet this standard . . . , the [c]ourt finds that [the r]elator has failed to set out specific facts showing a genuine issue for trial regarding the materiality of purported misrepresentations . . . ."); *United States v. Holy Cross Hosp., Inc.*, No. 03-62097-CIV, 2007 WL 2480236, at *5 (S.D. Fla.

Aug. 29, 2007) (granting summary judgment to the defendants on FCA claims where the plaintiff offered almost no evidence).

First, the court notes that Deligdish only argues materiality as to the CARES Act, seemingly abandoning the element as to the other FCA counts. (*See* Dkt. 142 at 14–15 (arguing that "Parrish is entitled to summary judgment for all the FCA [c]ounts" because "Deligdish fails to produce any evidence that would establish materiality under the FCA[]" (emphasis omitted)); Dkt. 153 at 16–17.) *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n.36 (11th Cir.2008) (noting that the plaintiff had abandoned a claim on summary judgment); *Johns v. CSX Transportation, Inc.*, 210 F. Supp. 3d 1357, 1377 (M.D. Ga. 2016) ("[W]hen a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims."); *Katrensky v. United States*, 732 F. Supp. 2d 1194, 1204 (M.D. Ala. 2010) ("[T]he plaintiff['s] failure to substantively address their . . . claim[s] acts as a concession that th[ese] claim[s] do[] not survive the motion for summary judgment [as t]he burden is on the parties to formulate arguments[,] and grounds alleged in the complaint but not relied upon in responding to a motion for summary judgment are deemed abandoned.").

Second, Deligdish asserts—without citation to any record evidence—that "[a]s a CARES Act recipient, Parrish certified and caused the certification to the Government that the funds would be used for eligible purposes" and "[i]n the absence of such certifications, Parrish would not have received the funds" so "the [g]overnment clearly considered the certifications to be material, as they were a necessary

prerequisite to Parrish receiving funds." (Dkt. 153 at 16–17.) Deligdish "offers no evidence in support of that proposition other than [his] own say-so, which is clearly insufficient" at the summary judgment stage. *See United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1033 (D.C. Cir. 2017) (affirming a grant of summary judgment where the plaintiff did not provide evidence of materiality). Still, assuming Deligdish is correct, and construing the evidence in the light most favorable to Deligdish, "[a] misrepresentation cannot be deemed material merely because the [g]overnment designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Universal Health*, 579 U.S. at 194; *see id.* ("[W]hen evaluating materiality under the [FCA], the [g]overnment's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive."); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) ("[T]he [FCA] is not a blunt instrument to enforce compliance with all regulations." (ellipses and quotation omitted)).

Deligdish also states—again, without citation to any record evidence—that Parrish's alleged misrepresentations are material because "[t]he likely or actual behavior of the [g]overnment without such certifications is to deny the funds," and that "[t]he essence of the bargain with the [g]overnment regarding the CARES Act is plainly articulated in the law: CARES Act funds are only to be used for specified purposes and not for other purposes" and that "Parrish violated this basic tenant." (Dkt. 153 at 17 (quotation omitted).) But it is not "sufficient for a finding of materiality that the [g]overnment would have the option to decline to pay if it knew of the

defendant's noncompliance." *Universal Health*, 579 U.S. at 194; *see Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 (11th Cir. 2020) F.3d at 1109 ("The FCA is not a wide-ranging tool to combat failures to comply with even important government regulations."). Further, Deligdish has "produced no evidence showing the . . . violations were substantial enough to threaten this bargain." *See United States v. DaVita, Inc.*, No. 6:17-CV-1592-RBD-GJK, 2021 WL 4948076, at *4 (M.D. Fla. Aug. 10, 2021) (finding that the essence of the bargain factor favored the defendants because that the "[r]elators d[id] not point to a single laboratory that lost accreditation or where payment was refused based on similar deficiencies" nor did they "produce[] other evidence showing the [g]overnment consider[ed] violations like these significant enough to restrict payment" and, as a result, the relators did not "produce[] any evidence supporting their position, so no reasonable jury could conclude these deficiencies go to the essence of the bargain").

Ultimately, as to the CARES Act claims, the court concludes that the "scant evidence support[s] only the conclusion that" the certifications "are, at most, labeled as conditions of payment" but "[t]his evidence, without more, is insufficient to establish materiality." *See Ruckh*, 963 F.3d at 1109; *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447–48 (7th Cir. 2016) (affirming grant of summary judgment where the relator "offered no evidence" and recognizing allegations of materiality as insufficient where "the most [the plaintiff] has shown is that [the defendant's] supposed noncompliance and misrepresentations would have entitled the government to decline payment" and concluding "that is not enough"); *DaVita*, 2021 WL 4948076, at *6

(granting summary judgment to the defendants where the relators did not "provide evidence the [g]overnment would act on the violations" and thus "no reasonable jury could conclude these [violations] were material").

**B. The Stark Act**

The Stark Act generally "prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital." *Mastej*, 591 F. App'x at 698 (quoting 42 U.S.C. § 1395nn(a)(1)(A)). It further "prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such referred patients." *Id.* (citing 42 U.S.C. § 1395nn(a)(1)(B)). Because the Stark Act does not "provide [a] private right[] of action," *Ameritox, Ltd. v. Millenium Lab'ys, Inc.*, 803 F.3d 518, 522 (11th Cir. 2015), Deligdish pleads that Parrish's violations of the Stark Act constitute separate violations of the FCA, (*see* Dkt. 83 at 48–54). *See Bingham v. BayCare Health Sys.*, No. 8:14-cv-73-T-23JSS, 2016 WL 8739056, at *2 (M.D. Fla. Dec. 16, 2016) ("A violation of . . . the Stark [Act] . . . can form the basis of liability under the [FCA]."), *report and recommendation adopted by* 2017 WL 1386838, at *1 (M.D. Fla. Apr. 18, 2017).

Parrish argues that they are entitled to summary judgment as to the Stark Act claims because they did not knowingly violate the FCA based on the Stark Act. (Dkt. 142 at 11–12.) Deligdish fails to respond, and accordingly, the court treats this claim as abandoned. (*See* Dkt. 153.) *See Jones*, 564 F. App'x at 434 ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim[,] or defense is unopposed." (alteration adopted and quotation omitted)). To the extent that

Deligdish argues that "[s]ummary judgment is inappropriate because disputes as to material facts related to the Stark Act claims persist," the court disagrees. (Dkt. 153 at 19.) Deligdish fails to identify any evidence in support of these alleged disputes. (*See id.* at 10–11, 19–21.) "[C]onclusory allegations without specific supporting facts have no probative value" and in order to defeat summary judgment, a litigant must offer evidence, whether through affidavit or otherwise, that sets "forth specific facts to show why there is an issue for trial." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation omitted). Because Deligdish fails to do so here, Parrish is entitled to summary judgment as to the Stark Act claims. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (holding that a non-movant carries its burden on summary judgment only by "identify[ing] affirmative evidence" which creates a genuine dispute of material fact); *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981) (explaining that if the non-movant's response consists of nothing "more than a repetition of . . . conclusional allegations, summary judgment for the defendants [i]s not only proper but required"); *King v. Truist Bank*, No. 24-12736, 2025 WL 2814699, at *3 (11th Cir. Oct. 3, 2025) (upholding grant of summary judgment where the plaintiff provided "speculative, merely colorable, evidence" which was "insufficiently probative to create a genuine issue of material fact"); *Marable v. Marion Mil. Inst.*, 906 F. Supp. 2d 1237, 1251 (S.D. Ala. 2012) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record." (quotation omitted)), *aff'd*, 595 F. App'x 921 (11th Cir. 2014); *Carolina Acquisition, LLC v. Double Billed, LLC*, 627 F. Supp. 2d 1337, 1340 (S.D. Fla. 2009) ("Federal [j]udges . . . possess neither the

luxury nor the inclination to sift through [a] mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment.").[11]

### C. State Law Claims

Parrish argue they are entitled to summary judgment as to the state-law claims under the Florida False Claims Act for the same reason they are entitled to summary judgment on the claims under the Federal FCA. (Dkt. 142 at 26.) Deligdish does not dispute that the same standard is applied to the evaluation of the claims under both statutes. (*See* Dkt. 153.) The court agrees with Parrish. *See Odom*, 2023 WL 5203000, at *9 (dismissing with prejudice FFCA claims because "dismissal [was] warranted for reasons already stated [for the FCA], which apply equally under the [FFCA]").

## CONCLUSION

In sum, the court concludes that Halifax and Parrish are entitled to summary judgment for several reasons. First, as to the LIP program claims under the FCA, the court concludes that Halifax and Parrish are entitled to summary judgment because the public disclosure bar applies and Deligdish is not an original source. Further, the court concludes that Deligdish fails to establish the scienter and materiality elements. As to the CARES Act claims under the FCA, the court notes that Deligdish effectively abandons these claims, but even if he did not, the court concludes that the public

[11] To the extent that Deligdish attempts to manufacture a dispute of material facts by pointing to allegations in the complaint and speculating as to the reason for certain things supposedly admitted by Parrish, the court is not convinced. (*See* Dkt. 153 at 19–20.) *See Cordoba v. Dillard's, Inc.*, 419 F. 3d 1169, 1181 (11th Cir. 2005) ("[U]unsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (alteration adopted)).

disclosure bar likely applies, or at the very least, Deligdish does not adequately demonstrate that it does not apply, and Deligdish is likely not an original source. Even then, Deligdish fails to meet provide sufficient evidence to satisfy the scienter and materiality elements. As to the conspiracy claims, the court concludes that Deligdish has abandoned them, but even if he has not, he cannot establish these claims for the same reason he cannot establish his other FCA claims. And because he cannot establish his FCA claims, he cannot establish his FFCA claims. Finally, Deligdish fails to adequately demonstrate that there is a genuine dispute of material fact as to the Stark Act claims with record evidence and fails to respond to the contents of Parrish's motion, thereby abandoning the argument.

Accordingly:

1. Defendants' motions for summary judgment (Dkts. 140, 142) are **GRANTED**.
2. Deligdish's motion for summary judgment (Dkt. 141) is **DENIED as moot**.[12]
3. Defendants' motions to dismiss (Dkts. 125, 126) are **DENIED as moot**.[13]
4. The Clerk to terminate any motions and deadlines pending in this case and to close the case file.

---

[12] *See Great Lakes Ins. SE v. Crabtree*, 673 F. Supp. 3d 1301, 1312 (S.D. Fla. 2023) (granting summary judgment to the defendants and denying the plaintiffs' motion for summary judgment as moot), *aff'd*, 176 F.4th 1240 (11th Cir. 2026); *see also Omni Healthcare, Inc. v. MD Spine Sols. LLC*, 761 F. Supp. 3d 356, 371 (D. Mass.) (granting the defendants motion for summary judgment and denying the plaintiff's motion for partial summary judgment as moot), *aff'd sub nom. United States ex rel. Omni Healthcare Inc. v. MD Spine Sols. LLC*, 160 F.4th 248 (1st Cir. 2025).

[13] *See Abdullah v. City of Jacksonville*, 242 F. App'x 661, 662 (11th Cir. 2007) (affirming when the "district court denied the defendants' motion to dismiss as moot when it granted their motion for summary judgment").

**ORDERED** in Orlando, Florida, on August 14, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record